SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION IV

**No.** CV–16–752

| | |
|---|---|
| | **Opinion Delivered:** February 1, 2017 |
| JACOB EARLS | |
| APPELLANT | APPEAL FROM THE GREENE COUNTY CIRCUIT COURT [NO. 28JV-2014-099] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE BARBARA HALSEY, JUDGE |
| APPELLEES | AFFIRMED |

## BART F. VIRDEN, Judge

Jacob Earls appeals the order of the Greene County Circuit Court terminating his parental rights. Earls asserts that the circuit court erred in finding that there was sufficient evidence to support statutory grounds for termination. Based on our review, we are not left with a definite and firm conviction that the circuit court's statutory-grounds findings were in error, and we affirm.

### I. *Facts*

On July 27, 2014, twins S.M. and D.M. (b. 7/16/2014) were removed from their mother's custody due to the presence of methamphetamine in their systems. A hearing was held on July 31, 2014, and in the subsequent order the circuit court found that probable cause existed to remove the children from the custody of their mother, Charity Sessums. The circuit court noted that Earls was a putative father, that his whereabouts were unknown, that he had not been served, and that he was not present for the hearing. The Arkansas

Department of Human Services (Department) was ordered to develop a case plan and make diligent efforts to discover Earls's location, and Earls was ordered to establish paternity.

On August 19, 2014, the circuit court adjudicated the children dependent-neglected. Earls did not appear at the hearing. In the written order, the circuit court found that the process server had attempted to serve Earls, but was unable to because his attempts were "actively avoided by the parent(s). The court finds that the Department has made thorough and diligent efforts to locate the mother and putative fathers." The Department was ordered to provide standard welfare services and develop an appropriate case plan. The parents were ordered to comply with the case plan, with the court's orders, and with any reasonable Department requests. A review hearing was set for January 15, 2015.

An amended petition for dependency-neglect was filed January 12, 2015. Earls's address was listed in the amended petition and "abandonment" was added to the grounds supporting the Department's assertion of dependency-neglect. A second amended petition was filed on January 13, 2015, and it set forth that the Department had concerns about service of process and was seeking a new adjudication on the parents. The Department reiterated that abandonment was among the causes of the dependency/neglect. On the same date, the Department filed a motion on Earls's behalf, requesting that the circuit court order a DNA test to establish Earls's paternity. The circuit court granted the motion on January 15, 2015.

On March 31, 2015, Earls filed a pro se answer to the second amended petition for dependency neglect. In it, he listed several relatives he felt would be placement options for the children. On April 23, 2015, the circuit court entered an adjudication-and-review order

finding that the children were dependent-neglected due to the presence of controlled substances in their systems at birth. The circuit court found that Earls was incarcerated and had been served on January 27, 2015, via service on the warden. The circuit court found that the Department had made reasonable efforts to provide services. The parents were ordered to cooperate and maintain contact with the Department, obey all orders of the court, watch "The Clock is Ticking," complete parenting classes, and submit to drug screening. The putative fathers were ordered to establish paternity.

On May 1, 2015, the DNA test results were filed with the court, and they showed that Earls's probability of paternity was 99.99%.

On August 28, 2015, the circuit court entered a permanency-planning order. In it the circuit court found that Earls had not established significant contacts with the children and his parental rights had not attached. The circuit court found that Earls was incarcerated and that his projected release date was September 7, 2015. Earls did not appeal the permanency planning order.

On January 8, 2016, the Department filed a petition for termination. In its petition it cited two statutory grounds regarding Earls: (1) Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)(b)(Repl. 2015)—that the children had lived out of the home of the noncustodial parent for twelve months, and despite meaningful efforts by the Department to rehabilitate Earls and correct the conditions that prevented placement with Earls, the conditions had not been remedied by him; and (2) Arkansas Code Annotated section 9-27-341(b)(3)(B)(ii)(a)—that the children had lived outside the parents' home for twelve months,

and that Earls had failed to provide financial support or maintain meaningful contact with the children.

On March 30, 2016, the circuit court held a termination hearing at which Earls appeared and was represented by counsel.

Marsha Bobo, the family service worker assigned to the case, testified that because Earls was incarcerated, services could not be provided to him; however, she also testified that the Arkansas Department of Correction offered some of the same services that the Department provided, such as parenting classes and counseling. Bobo testified that she did not know if the Department had contacted Earls regarding the services offered at the Cummins Unit, and she confirmed that his case file did not mention any discussion of services. Bobo testified that she was unaware of Earls contacting the Department or of any requests for visitation with the children. Bobo testified that placing the children with Earls was impossible because he was in prison. Bobo testified that in the case of extenuating circumstances, such as imprisonment, the Department should make accommodations in the case plan.

Bobo testified that the children are adoptable and the foster parent with whom the children had lived since their removal was in a position to adopt.

Earls testified that he would like the children to be placed in his custody when he is released from prison. He testified that he thought he would be released in two-to-three months, but that his sentence that was issued on December 22, 2014, was for 5 years. Earls testified that he received a letter dated September 17, 2014, notifying him that the children were in the Department's custody and inviting him to a "family centered meeting." Earls

testified that when he arrived at the scheduled time of 3:00 he discovered that the meeting had already taken place at 8:00 that morning. Earls testified that he was served with a case plan, but that there were requirements in it that he could not meet, such as watching the video "The Clock is Ticking" and going to counseling in Paragould.

Earls testified that he had contacted the Department over the course of the case and that he had requested a DNA test by filing a motion with the court. He explained that he had written letters to legal counsel for the Department and the Office of Child Support Enforcement. He also testified that he had taken three classes since he had been incarcerated, but that the parenting classes were backlogged and he could not get a place in them.

Earls made a motion to dismiss and argued that the Department had not made meaningful efforts to rehabilitate him, despite his efforts to contact the Department; thus, section 9-27-341(b)(3)(B)*(i)(b)* could not be cited as a ground supporting the Department's petition to terminate his parental rights. Earls also argued that Arkansas Code Annotated section 9-27-341(b)(3)(B)*(ii)(a)* could not be cited as grounds supporting termination because he was indigent and incarcerated and therefore unable to support his children financially. Earls argued that the Department's allegation that Earls failed to maintain meaningful contact with his children was false because he had attempted to contact the Department regarding his children several times.

In response, the Department argued that Earls had made no attempt before his incarceration to contact his children, that it does not transport children to prison to visit incarcerated parents, that there are no services that could correct the condition of Earls's

incarceration, and that the children could not be placed with him because of his incarceration.

The attorney ad litem asserted that although the Department had not made efforts regarding Earls, it was not the Department's fault that the condition of his incarceration had not been remedied.

The circuit court denied Earls's motion to dismiss and terminated his parental rights. Counsel for Earls requested a ruling on whether the Department had made sufficient efforts regarding Arkansas Code Annotated section 9-27–341(b)(3)(B)(i)*(b)*, and the circuit court stated from the bench:

> I am. I am making that. Mr. Earls was not able to articulate any effort that he needed by the Department which he knows that the Department is able to provide, and the Department has not indicated any efforts that they could have made that are known to them. So, yes, I am making that finding.

Counsel for Earls responded, "just for clarification, your honor, that the Department has made meaningful effort?" and the court responded, "I'm finding that 5(b) is a grounds for termination, yes."

The circuit court entered the order terminating Earls's parental rights on May 26, 2016. In the order, the circuit court found that termination was supported by Arkansas Code Annotated section 9-27–341(b)(3)(B)(i)*(b)* and by Arkansas Code Annotated section 9-27–341(b)(3)(B)(ii)*(a)*. The circuit court found that Earls had not remedied the conditions that prevented the children from being placed with him, namely incarceration and lack of stable housing or employment. The circuit court also found that before Earls was incarcerated he had made an effort to gain information about his children but that Earls had never attempted to contact the children or visit them, and that he had never materially or monetarily

supported the children. The circuit court found that "Mr. Earls has not maintained meaningful contact with the children."

Earls filed a timely notice of appeal.

## II. *Points on Appeal*

Earls argues that the circuit court erred in finding sufficient evidence supported the statutory grounds for terminating his parental rights. First, Earls asserts that the circuit court did not recognize him as the biological father until the termination order; thus, Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)*(b)* did not apply to him for the requisite twelve months. Second, Earls asserts that the Department failed to make reasonable efforts to provide services and that his incarceration was not a valid reason for not offering services to him. Third, Earls argues that he had never been ordered to financially support his children; thus, terminating his parental rights based on Arkansas Code Annotated section 9-27-341(b)(3)(B)(ii)*(a)*, the statutory ground of failure to provide material support, could not be applied to him. Earls also argues that he had not willfully failed to maintain contact with his children. Earls does not challenge the circuit court's finding that the children are adoptable, nor does he challenge the sufficiency of the circuit court's best-interest finding.[1]

---

[1]As we noted earlier, Earls never appealed the permanency planning order in which the circuit court found that his parental rights had not attached, nor does he argue on appeal that his rights had not attached and therefore should not have been terminated. Earls is referred to as the legal father of the children in the Department's petition for termination, he was appointed counsel for the termination hearing by the court and the circuit court referred to him as the father of the children in the termination order, though he was still listed as "putative father" in the case heading.

A. Standard of Review

We review termination-of-parental-rights cases de novo. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents, but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.* Only one ground need be proved to support termination. *McGaugh v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 485, at 7, ___S.W.3d ___, ___. That it is in the child's best interest to terminate those rights must be proved by clear and convincing evidence. *M.T. v. Ark. Dep't of Human Servs.*, 58 Ark. App. 302, 952 S.W.2d 177 (1997). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Vail v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 150, at 10, 486 S.W.3d 229, 234. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006).

B. Applicable Law and Analysis

We begin our analysis with Earl's third argument regarding Arkansas Code Annotated section 9-27-341(b)(3)(B)(ii)*(a)* which sets forth that parental rights may be terminated if

> [i]he juvenile has lived outside the home of the parent for a period of twelve (12) months, and the parent has willfully failed to provide significant material support in accordance with the parent's means or to maintain meaningful contact with the juvenile. To find willful failure to maintain meaningful contact, it must be shown that the parent was not prevented from visiting or having contact with the juvenile

by the juvenile's custodian or any other person, taking into consideration the distance of the juvenile's placement from the parent's home.

In the order terminating Earls's parental rights, the circuit court found that Earls "had never visited the children, provided material or monetary support. Mr. Earls has not maintained meaningful contact with the children." At the termination hearing, Earls explained that, when the twins were born, he was living with his grandmother and did not have contact with Charity and did not know how to get in touch with her. Earls testified that he was not positive at that time that the children were his, but that he knew that it was a possibility that he was the father. At some point before the case was opened and before Earls's arrest, Earls had asked a friend to call Charity's father to ask about the children. Earls testified that "He [the children's grandfather] said they were doing good and leave them alone. So I did." There was no evidence presented that Earls tried to have paternity established or visitation ordered before his arrest in August or before the dependency/neglect case was opened. There was also no evidence presented that he had tried to monetarily support his children while he was not incarcerated, or that he had tried to contact Charity after he had been told to leave them alone.

After the dependency/neglect case was opened, Earls contacted the Department by letter. First, he motioned the court for an order to conduct a DNA test in January 2015, about six months after the children were born and removed from their mother's custody. In Earls's subsequent letter to Benjamin Pollitzer, a Department attorney with the Office of Policy and Legal Services, Earls requested that six of his family members be considered for placement, and he again requested DNA testing.

Though Earls filed certain pleadings in the case after his incarceration and after the dependency/neglect case had been opened, Earls failed to assert his parental rights or establish contact with his children. Furthermore, there was no evidence presented indicating that the Department prevented Earls from contacting the children.

### III. *Conclusion*

We affirm on this point. Because only one statutory ground must be proved in order to support termination of parental rights, we need not reach Earls's arguments regarding the other statutory grounds.

Affirmed.

GRUBER, C.J., and HIXSON, J., agree.

*Leah Lanford*, Ark. Pub. Defender Comm'n, for appellant.

*Andrew Firth*, County Legal Operations, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.