SLIP OPINION

Cite as 2017 Ark. 171

# SUPREME COURT OF ARKANSAS

No. CV–17–112

| | |
|---|---|
| JACOB EARLS<br>APPELLANT | **Opinion Delivered** May 11, 2017 |
| V. | APPEAL FROM THE GREENE COUNTY CIRCUIT COURT [NO. 29JV-14-99] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN, S.M. AND D.M.<br>APPELLEES | HONORABLE BARBARA HALSEY, JUDGE<br><br>REVERSED AND REMANDED; COURT OF APPEALS' OPINION VACATED. |

**KAREN R. BAKER, Associate Justice**

This appeal stems from the termination of parental rights of appellant, Jacob Earls, to his children, twins S.M. and D.M., both born on July 16, 2014. After the twins tested positive for methamphetamine, appellee, the Arkansas Department of Human Services (hereinafter "DHS"), initiated dependency-neglect proceedings on July 30, 2014, and ultimately the termination of parental rights proceedings that are the subject of this appeal.

On July 27, 2014, the twins were removed from their mother's custody after they tested positive for drugs. On July 31, 2014, the circuit court held a hearing, and in the subsequent order, the circuit court found that probable cause existed to remove the children from the custody of their mother, Charity Sessums. Sessums's parental rights were also terminated and are not part of this appeal. At the hearing, the circuit court recognized that Earls is a putative father, that his whereabouts are unknown, that he had not been served, and

that he was not present for the hearing. On August 19, 2014, the circuit court ordered DHS to develop a case plan and make diligent efforts to discover Earls's location, and Earls was ordered to establish paternity. In its order, the circuit court also adjudicated the children dependent-neglected and ordered DHS to provide standard welfare services and develop an appropriate case plan.

On January 12, 2015, DHS filed an amended petition for dependency-neglect. Earls's address was listed in the amended petition, and "abandonment" was added to the grounds supporting DHS's assertion of dependency-neglect. On January 13, 2015, DHS filed a second amended petition and explained that DHS had concerns about service of process and was seeking a new adjudication on the parents. On the same date, DHS filed a motion on Earls's behalf requesting that the circuit court order a DNA test to establish Earls's paternity. On January 15, 2015, the circuit court granted the motion. On March 31, 2015, Earls filed a pro se answer to the second amended petition for dependency neglect and provided several relatives who he believed would be placement options for the children.

On April 23, 2015, the circuit court entered an adjudication-and-review order finding that the children were dependent-neglected due to the presence of controlled substances in their systems at birth. The circuit court also held that Earls was incarcerated and had been served on January 27, 2015, via service on the warden and that DHS had made reasonable efforts to provide services. The putative fathers were ordered to establish paternity.[1] On

---

[1]Kevin Myers, Bobby Lindsey, and Jacob Earls are all listed on the pleadings as putative fathers.

May 1, 2015, the DNA test results were filed with the court, and they showed that Earls's probability of paternity was 99.99 percent. On August 28, 2015, the circuit court entered a permanency-planning order. In the order, the circuit court found that Earls had not established significant contacts with the children and his parental rights had not attached. The circuit court found that Earls was incarcerated and that his projected release date was September 7, 2015. Earls did not appeal the permanency-planning order.

On January 8, 2016, the Department filed a petition for termination. In its petition it cited two statutory grounds: (1) Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)*(b)*(Repl. 2015) that the children had lived out of the home of the noncustodial parent for twelve months, and despite meaningful efforts by the Department to rehabilitate Earls and correct the conditions that prevented placement with Earls, the conditions had not been remedied by him; and (2) Arkansas Code Annotated section 9-27-341(b)(3)(B)(ii)*(a)* that the children had lived outside the parents' home for twelve months, and that Earls had failed to provide financial support or maintain meaningful contact with the children. On February 25, 2016, the circuit court issued a "Termination of Parental Rights Warning Order" and listed Kevin Myers and Jacob Earls each as "Legal/Putative Father."

On March 30, 2016, the circuit court held a termination hearing. Earls and Bobby Lindsey were both listed on the petition as the "legal father." Earls appeared and was represented by counsel. Marsha Bobo, the family service worker assigned to the case, testified that she had had no contact with Earls because he was incarcerated. She also testified that no services had been provided to Earls because his incarceration prevented DHS from

SLIP OPINION

providing him services. Bobo further testified that the Arkansas Department of Correction offered some of the same services that DHS provided, such as parenting classes and counseling, but she did not know if DHS had contacted Earls regarding the services offered at the Cummins Unit, and she confirmed that his case file did not mention any discussion of services. Bobo further testified that she was unaware of Earls's contacting DHS or of any requests for visitation with the children. Bobo testified that Earls could have contacted DHS and she would have been made aware of it. Bobo testified that she was made aware at the hearing that Earls was the biological father but had never had any meaningful contact with the twins.

Finally, Earls testified that he would like the twins to be placed in his custody when he is released from prison. He testified that he thought he would be released in two to three months, but his sentence that was issued on December 22, 2014, was for 5 years. Earls testified that he received a letter dated September 17, 2014, notifying him that the children were in DHS custody and inviting him to a "family centered meeting." Earls testified that when he arrived at the scheduled time of 3:00 p.m. he discovered that the meeting had already taken place at 8:00 a.m. that morning. Earls testified that he was served with a case plan, but that there were requirements in it he could not meet, such as watching the video "The Clock is Ticking" and going to counseling in Paragould. Earls further testified that he had contacted DHS during the case and had requested a DNA test by filing a motion with the court. Earls testified that he had written letters to legal counsel for DHS and the Office of Child Support Enforcement. He also testified that he had taken three classes since he had

been incarcerated but that the parenting classes were "backlogged" and he could not get a place in them.

At the close of the hearing, Earls moved to dismiss and argued that DHS had not made any efforts to provide him services because he was incarcerated and also found that he failed to maintain meaningful contact with the children. Earls also argued that Arkansas Code Annotated section 9–27–341(b)(3)(B)(ii)(*a*) could not be cited as grounds to support termination, because he was indigent and incarcerated and therefore unable to support his children financially. Earls argued that DHS's allegation that Earls failed to maintain meaningful contact with his children was incorrect because he had attempted to contact DHS regarding his children several times. Further, the attorney ad litem asserted that although DHS had not made efforts regarding Earls, it was not DHS's fault that the condition of his incarceration had not been remedied. The circuit court denied Earls's motion to dismiss and terminated his parental rights. On May 26, 2016, the circuit court entered the order terminating Earls's parental rights.

From the termination order, Earls timely appealed to the court of appeals, which affirmed the circuit court. *Earls v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 53., ___S.W.3d ___. On March 9, 2017, we granted Earls's petition for review, and we review the case as if it were originally filed in this court. On appeal, Earls asserts that the circuit court erred in finding that the statutory grounds for termination of his parental rights had been met under Ark. Code Ann. § 9–27–341 (b)(3)(B)(i)(*b*) and (b)(3)(B)(ii)(*a*).

*Standard of Review*

Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Crawford v. Ark. Dep't of Human Servs.*, 330 Ark. 152, 951 S.W.2d 310 (1997). In cases involving the termination of parental rights, there is a heavy burden placed upon the party seeking to terminate the relationship. *See Bush v. Dietz*, 284 Ark. 191, 680 S.W.2d 704 (1984). Termination of parental rights is a two-step process that requires the circuit court to find that the parent is unfit and that termination is in the best interest of the child. *L.W. v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 44, 380 S.W.3d 489. The first step requires proof of one or more of the statutory grounds for termination. Ark. Code Ann. § 9-27-341(b)(3)(B). The second step requires consideration of whether the termination of parental rights is in the juvenile's best interest. Ark. Code Ann. § 9-27—341(b)(3)(A).

Further, we review termination-of-parental-rights cases de novo. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Grounds for termination of parental rights must be proved by clear and convincing evidence. *M.T. v. Ark. Dep't of Human Servs.*, 58 Ark. App. 302, 952 S.W.2d 177 (1997). The question on appeal is whether the circuit court's finding that a disputed fact was proved by clear and convincing evidence is clearly erroneous, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. *Id*. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Dinkins*, *supra*. Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Baker v. Ark. Dep't of Human Servs.*, 340 Ark. 42, 8 S.W.3d 499 (2000).

SLIP OPINION

II. *Points on Appeal*

With these standards in mind, we turn to the circuit court's order that Earls challenges on appeal:

> As to Jacob Earls. Ark. Code Ann. § 9-27–341(b)(3)(B)(i)(b) That a juvenile has been adjudicated by the court to be dependent-neglected and has continued out of the home of the non-custodial parent for twelve (12) months, and despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that prevented the child from safely being placed in the parent's home, the conditions have not been remedied by the parent.

> As to Jacob Earls. Ark. Code Ann. § 9-27–341(b)(3)(B)(ii)(a) The juveniles have lived outside the home of the parent for a period of time of twelve (12) months, and the parent has willfully failed to provide significant material support in accordance with the parent's means or to maintain meaningful contact with the juveniles.

In reviewing the circuit court's order, the relevant statutes are as follows. First, Ark. Code Ann. § 9-27-102 "Best Interest of the Child" provides

> The General Assembly recognizes that children are defenseless and that there is no greater moral obligation upon the General Assembly than to provide for the protection of our children and that our child welfare system needs to be strengthened by establishing a clear policy of the state that the best interests of the children must be paramount and shall have precedence at every stage of juvenile court proceedings. The best interest of the child shall be the standard for juvenile court determinations as to whether a child should be reunited with his or her family or removed from or remain in a home wherein the child has been abused or neglected.

Second, Ark. Code Ann. § 9-27-302 "Construction," provides in pertinent part:

> This subchapter shall be liberally construed to the end that its purposes may be carried out:

> (1) To assure that all juveniles brought to the attention of the courts receive the guidance, care, and control, preferably in each juvenile's own home when the juvenile's health and safety are not at risk, that will best serve the emotional, mental, and physical welfare of the juvenile and the best interest of the state; . . .

(4) To provide means through which the provisions of this subchapter are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced.

Third, Ark. Code Ann. § 9-27-303(40) defines "parent" as

> a biological mother, an adoptive parent, or a man to whom the biological mother was married at the time of conception or birth or who has signed an acknowledgment of paternity pursuant to § 9-10-120 or who has been found by a court of competent jurisdiction to be the biological father of the juvenile[.]

Finally, with regard to establishing grounds for termination of parental rights, Ark. Code Ann. § 9-27-341 "Termination of Parental Rights," requires that only one ground must be met to terminate parental rights. *See Wade v. Ark. Dep't of Human Servs.*, 337 Ark. 353, 359, 990 S.W.2d 509, 513 (1999). Here, the circuit court held that two grounds had been met, Ark. Code Ann.§ § 9-27-341 (b)(3)(B)(i)(*b*) and § 9-27-341(b)(3)(B)(ii)(*a*) which state:

> (3) An order forever terminating parental rights shall be based upon a finding by clear and convincing evidence:
>
> (B) Of one (1) or more of the following grounds:
>
> . . . .
>
> (i)(*b*) That a juvenile has been adjudicated by the court to be dependent-neglected and has continued out of the home of the noncustodial parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that prevented the child from safely being placed in the parent's home, the conditions have not been remedied by the parent.
>
> . . . .
>
> (ii)(*a*)The juvenile has lived outside the home of the parent for a period of twelve (12) months, and the parent has willfully failed to provide significant

material support in accordance with the parent's means or to maintain meaningful contact with the juvenile.

With these statutes in mind, we turn to the order in Earls's case. Earls does not object to the best-interest finding. Instead, he contends that the circuit court erred in its finding that he was an unfit parent based on two statutory grounds.

### III. *"Parent"*

First, Earls asserts that the circuit court erred in both findings because the statute requires that the juvenile have lived out of the custody of the "parent" or non-custodial "parent" for twelve months. Earls contends that at the time of the termination hearing, Earls had not been found to be the "parent." DHS responds that Earls did not preserve the argument to now bring on appeal. We disagree. In a civil bench trial, a party who does not challenge the sufficiency of the evidence at trial does not waive the right to do so on appeal. *Ingle v. Ark. Dep't of Human Servs.*, 2014 Ark. 53, at 8, 431 S.W.3d 303, 307; *Bohannon v. Robinson*, 2014 Ark. 458, at 5, 447 S.W.3d 585, 588. Here, Earls challenged the statutory grounds for termination, which necessarily include the requirement that he is a "parent." Accordingly, we hold that Earls did properly preserve the issue for appeal.

With regard to the merits of Earls's argument that he had not established his legal status as a "parent" to satisfy the statute, the record demonstrates that although it was determined through a paternity test on May 1, 2015, that Earls is the father, and the test results were admitted into evidence at the permanency-planning hearing, the circuit court did not recognize Earls as the biological father and continued to treat him as a putative father. In the circuit court's August 28, 2015 permanency-planning order, the circuit court referred

to Earls as the putative father. In its petition for termination of parental rights filed on January 8, 2016, DHS listed Earls as Jacob Earls, putative father. Later at the March 30, 2016 termination hearing, the circuit court recognized that Earl's legal status needed to be addressed:

| THE COURT: | Let's see, on 2/22, I started a hearing, termination of parental rights, I continued it to today because there were no findings regarding Mr. Earls' legal standing. And I said he needed an opportunity to meet his burden as a putative father or a biological father. That's all I've got. . . . . |
| | Regarding Mr. Earls. He submitted to DNA testing. This was after my hearing. Wait just a minute. I've got to go back to my hearing. July 9th, 2015, I had a permanency hearing. Mr. Earls appeared via telephone from the Cummins unit. |
| | DNA was done in March the 18th of 2015 on Mr. Earls and the twins. That testing – – . . . and I have DHS Exhibit No. 2, DNA test results with Mr. Earls at a 99.9 percent probability that he's the father of the twins. Okay. |
| | So on 8/27, we were to have a permanency planning hearing. At that time we should [have] had Mr. Earls before the Court attempting to meet his burden to determine where he falls. I guess he falls legally since we've got that, doesn't he? |
| | All right. Let's proceed. Identify your witnesses. |

This exchange is verbatim from the record, and from our review there is not another colloquy regarding Earls's legal status. Further, the record does not contain an order establishing Earls's legal status, and the termination order lists Earls as the putative father.

In reviewing the statute before the us, "'[t]he first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually

10

accepted meaning in common language.' *Potter v. City of Tontitown*, 371 Ark. 200, 209, 264 S.W.3d 473, 481 (2007). . . . The basic rule of statutory construction is to give effect to the intent of the legislature. *Dep't of Human Servs. & Child Welfare Agency Review Bd. v. Howard*, 367 Ark. 55, 62, 238 S.W.3d 1, 6 (2006). Additionally, in construing any statute, we place it beside other statutes relevant to the subject matter in question and ascribe meaning and effect to be derived from the whole. *Lawhon Farm Servs. v. Brown*, 335 Ark. 272, 984 S.W.2d 1 (1998)." *Ortho-McNeil-Janssen Pharm., Inc. v. State*, 2014 Ark. 124, at 10–11, 432 S.W.3d 563, 571. A plain reading of the applicable statute, Ark. Code Ann. § 9-27-303(40), defining "parent" means that a parent can be biological, or by adoption, or by a man who is married to a biological mother at the time of conception or by a man who has signed an acknowledgment of paternity, or by being found by a court of competent jurisdiction to be the biological father. In this case, although identified initially as a putative parent, the record fails to demonstrate that Earls's legal status as a putative parent or biological parent was established. Although the record demonstrates that Earls was appointed counsel for the termination hearing and was afforded rights as a parent, the record does not demonstrate that Earls's legal status as the biological parent was established to apply the twelve-month time period described in the statute.[2] Therefore, Earls's rights had not attached to then be

---

[2]Even assuming that the dissent is correct that the circuit court's vague statement in the March 30, 2016 termination hearing, "I have . . . DNA test results with Mr. Earls at a 99.9 percent probability that he's the father of the twins," established that Earls was the legal father, the 12-month statutory requirement has not been met. *See* Ark. Code Ann. § 9-27-341. Further, at the termination hearing, the circuit court explained it had continued the hearing because the circuit court had not entered findings regarding Earls's "legal standing." Immediately after stating that the DNA results demonstrated Earls was the father, the circuit

terminated. Further, we note that this interpretation supports the goal of our juvenile system provided in Ark. Code Ann. § 9-27-302, which shall be liberally construed, and provides that the purposes to be carried out are to assure that all juveniles brought to the attention of the courts receive the guidance, care, and control, preferably in each juvenile's own home . . . and to provide a means through which the provisions of this subchapter are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced.

Therefore, the circuit court erred in terminating Earls's parental rights. Accordingly, we reverse and remand this matter to the circuit court.

Reversed and remanded; court of appeals' opinion vacated.

WOOD, J., dissents.

**RHONDA K. WOOD, Justice, dissenting.** The majority reverses the order terminating Jacob Earls's parental rights on the basis that the record does not show that "Earls's legal status as a . . . biological parent was established," and, therefore, he had no rights to terminate. I disagree.

At the start of the termination–of–parental–rights hearing, the circuit court explained that Earls had the opportunity to meet his burden as to whether he was a putative father or a biological father. The court went further and referred to DHS Exhibit No. 2 and stated the

court recognized that it "should have had Mr. Earls before the court attempting to meet his burden to determine where he falls. I guess he falls legally since we've got that, doesn't he?" The circuit court ended the colloquy regarding Earls's legal status with a question, not a finding.

results depicted a 99.9 percent probability that Earls was the father. As the majority also

quoted, the court stated the following:

> So, on 8/27, we were to have a permanency planning hearing. At that time we should have had Mr. Earls before the Court attempting to meet his burden to determine where he falls. I guess he falls legally since we've got that [DNA test results], doesn't he?

The court, perhaps not as clearly as one would like, found Earls to be the biological

and legal father at the start of the termination-of-parental-rights hearing, and Earls was

afforded the right to appointed counsel. Earls also contends the court determined he was the

legal father at the termination hearing. As the biological father, he qualifies as a "parent"

under Arkansas Code Annotated section 9-27-303(40) (Repl. 2015). Although the majority

is correct that the heading of the termination-of-parental-rights order continued to label him

as the putative father, the order itself removed the putative label and simply referred to him

as the "father."

Earls's argument is not one the majority makes but is instead based on statutory

interpretation. According to him, the twelve-month requirement in both grounds for

termination could not apply until twelve months from the date he was declared the biological

father. This argument fails. Earls has not preserved that argument for appeal. Even in cases

involving dependency-neglect, we have held that we will not address the merits of an

argument that is raised for the first time on appeal. *E.g.*, *Lamontagne v. Ark. Dep't of Human

Servs.*, 2010 Ark. 190, 366 S.W.3d 351; *Ingle v. Ark. Dep't of Human Servs.*, 2014 Ark. 53, 431

S.W.3d 303. Because Earls raises an issue of statutory interpretation—not one of sufficiency

of the evidence—he was required to make the argument below. *See Sullivan v. State*, 2012

Ark. 74, at 30, 386 S.W.3d 507, 525 ("This court cannot and will not decide this issue of statutory interpretation for the first time on appeal."). The majority has reversed the circuit court for a reason the parties do not argue and ignores the well-settled principle against "reversing a circuit court for reasons not addressed by that court." *Roberts v. Roberts*, 2009 Ark. 567, at 8, 349 S.W.3d 886, 891.

I would hold the circuit court correctly found that the Department proved two statutory grounds for termination and affirm.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth*, County Legal Operations, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.