Second, Ark Code Ann. Ark. Code Ann. § 9-27-341 provides in pertinent part:
(3) An order forever terminating parental rights shall be based upon a finding by clear and convincing evidence:
(A) That it is in the best interest of the juvenile, including consideration of the following factors:
*549 (i) The likelihood that the juvenile will be adopted if the termination petition is granted; and
(ii) The potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent, parents, or putative parent or parents; and
(B) Of one (1) or more of the following grounds:
....
(vii)(a) That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.
Finally, with regard to establishing grounds for termination of parental rights, Ark. Code Ann. § 9-27-341"Termination of Parental Rights," requires that only one ground must be met to terminate parental rights. See Wade v. Ark. Dep't of Human Servs. , 337 Ark. 353, 359, 990 S.W.2d 509, 513 (1999).
III. Points on Appeal
With these standards in mind, we turn to the circuit court's order that Earls challenges on appeal. Earls challenges four statutory grounds for termination and the circuit court's best-interest findings.
A. Subsequent Factors
Earls asserts that the circuit court erred in finding that the subsequent factors grounds had been met contending that no services were offered to Earls and Earls did not manifest an incapacity or indifference to rehabilitate his circumstances.
Here, the record demonstrates that Earls does not have a relationship with the children; Earls has not seen, met, sent letters, or talked to these children. Earls was unavailable to take custody of the children when they were removed from their mother. Earls has been incarcerated for all but two months of the twins' lives. Since the filing of the original petition, Earls has been incarcerated for his failure to register as a sex offender after he entered a plea for having sex with a thirteen-year-old girl. The record further demonstrates that Earls did not request services from the Department, and because of his incarceration, there were no services that the Department could offer. Additionally, Earls has been eligible for early release since 2015, but because of his disciplinary infractions-use of synthetic marijuana, failure to obey, and insolence to a staff member-he was deemed not eligible for early release. Also, Earls does not have a plan for housing or employment upon his release.
In sum, the record demonstrates that Earls failed to address the subsequent factors that occurred. In this case, the twins were three years old at the August 2017 hearing, and Earls testified that he had never seen the twins or made contact with them. With the exception of two months, Earls has been unavailable to the twins their entire lives, and at the time of the hearing he had approximately two years remaining on his sentence before he would be considered for release from incarceration. While incarceration is not, in and of itself, conclusive on the termination issue, imprisonment does not toll a parent's responsibilities toward his or her children.
*550 Linker-Flores v. Ark. Dep't of Human Servs. , 364 Ark. 224, 217 S.W.3d 107 (2005). Further, his conduct during his incarceration, his history of substance abuse, the unknown status of his current substance-abuse issues, his lack of secured housing and income, and his lack of relationship with the twins were contributing factors in support of the circuit court's decision.
Having conducted a de novo review of all the relevant evidence, we conclude that the circuit court did not clearly err in terminating Earls's parental rights on the subsequent-factors ground regarding the twins. Earls's imprisonment does not toll his responsibilities as a parent toward his children. See Zgleszewski v. Zgleszewski , 260 Ark. 629, 542 S.W.2d 765 (1976). Here, Earls has manifested the incapacity or indifference to remedy the subsequent factors or rehabilitate his circumstances. Accordingly, based on our standard of review and the record before us, we affirm the circuit court.
B. Best Interest of the Children
Earls further challenges the circuit court's finding that the termination of his parental rights to the twins was in their best interest. "The two factors to consider in determining best interest are the likelihood of adoption and potential harm caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)." Brumley v. Arkansas Department of Human Services , 2015 Ark. 356 at 10, 2015 WL 5895440. Here, Earls does not challenge the adoptability finding. Further, the record supports adoptability as Tarpley testified that the twins were adoptable, their foster parents would like to adopt them, and the circuit court entered an order finding that they are adoptable. Thus, we conclude that the adoptability prong has been satisfied.
Earls challenges the circuit court's finding of potential harm. "The potential-harm analysis must be conducted in broad terms, including the harm the child suffers from the lack of stability in a permanent home." Id. (internal citations omitted). The circuit court found that that placing custody of the twins with Earls would be harmful to the twins' health and safety due to Earls's incarceration for a substantial period of the children's lives, his continued incarceration, his level three sex-offender status, his failure to register as a sex offender, his conduct during his incarceration, his history of substance abuse, the unknown status of his substance-abuse issues, and his non-existent relationship with his children. The circuit court also found that the twins were adoptable in a previous order in this case, and found that the twins remain adoptable. Earls challenges this best-interest finding, alleging that the circuit court erred because Earls provided a list of relatives who could care for his children while they awaited his release from incarceration, which "should only be one or two months"; and therefore, the potential-harm factor had not been satisfied. We disagree.
Here, at the termination hearing, the twins were three years old and Earls had not met, contacted, or sought visitation with the children. The twins have been in the Department's custody their entire lives, and Earls takes the position that he will be out in a month or two and when he is released, he could then seek services to ready himself for parenthood, secure steady income and locate housing. Earls testified that relatives would care for the children, but he also testified that he had not had any discussions with relatives about caring for the twins. Further, Earls testified that he remains incarcerated, is unsure of his release date and had not secured stable housing and employment.
*551 Additionally, Tarpley testified that Earls had not provided her with a list of relatives willing to care for the twins.
As discussed above, permanency is the objective of the termination procedure and cannot be lightly discounted. Bearden v. Ark. Dep't of Human Servs. , 344 Ark. 317, 42 S.W.3d 397 (2001). Here, we conclude that the evidence of potential harm, combined with the children's adoptability, supports the circuit court's ruling that termination of Earls's parental rights is in the twins' best interest.
Affirmed.
Hart, J., dissents.
Josephine Linker Hart, Justice, dissenting.
I wish to make it very clear that, in my view, the circuit court did not err in refusing to immediately give Mr. Earls custody of the minor children. However, I am unable to conclude that Mr. Earls has been afforded his fundamental right to due process, as embodied in this State's juvenile code, specifically the termination-of-parental-rights statute, Arkansas Code Annotated section 9-27-341. Moreover, I question whether termination of parental rights, which necessarily also involves the termination of parental obligations is appropriate in all but the most extreme cases. By terminating Mr. Earls's parental rights, the State of Arkansas has excused him from being financially responsible for his children. Accordingly, I dissent.
I will not dispute that Mr. Earls has, in the past, demonstrated a remarkable level of personal and parental irresponsibility. His own testimony confirmed that he is a convicted sex offender, currently serving a prison sentence for failure to register as a sex offender, a former substance abuser, a seventh-grade dropout, and a serial noncustodial parent-he has three other children, one who is twenty-one and two others who are being cared for by family members. Nonetheless, I must dissent from the termination of what is euphemistically called Mr. Earls's "parental rights."
A value judgment about whether Mr. Earls would be a good parent or not, however well-founded, does not excuse the circuit court from ensuring that he was given due process. The history of this case arguably demonstrates that Mr. Earls was denied his due process rights. In Earls I , we noted that he did not receive assistance of counsel until the termination hearing. Earls v. Ark. Dep't Human Servs. , 2017 Ark. 171, 518 S.W.3d 81. In fact, DNA testing had conclusively established nearly a year earlier that Mr. Earls is the father of the twins. We reversed and remanded the case because, the circuit court terminated Mr. Earls's parental rights based on the children being out of his home for twelve months and his failure to remedy the cause for removal, in spite of the fact there was no evidence in the record that established when Mr. Earls's status as a parent "attached." Id. 2017 Ark. at 11, 518 S.W.3d at 88. It was only after this court reversed and remanded the case did the circuit court enter an order of paternity.
The circuit court's second decision to terminate Mr. Earls's parental rights manifest an even more egregious deprivation of his due-process rights. The circuit court based its decision on three separate grounds, one of which-that Mr. Earls was sentenced to a substantial period of incarceration-was not asserted in the termination petition that ADHS had filed.[2] Mr. *552 Earls argues persuasively that these grounds lacked evidentiary support in the record, which the majority tacitly acknowledges by refusing to affirm the circuit court on any of the three grounds that it relied on.
Nonetheless, the majority has affirmed "on de novo review," justifying its decision on a ground it calls "failure to address subsequent factors," which I cannot find in Arkansas Code Annotated section 9-27-341. In its fact-finding, the majority has concluded that this ground is proved by Mr. Earls's "conduct during his incarceration, his history of substance abuse, the unknown status of his current substance-abuse issues, his lack of secured housing and income, and his lack of relationship with the twins." While these facts may be relevant in an analysis of whether termination of his parental rights is in the children's best interest, it simply does not correspond to the grounds set forth in section 9-27-341.[3]
*553 Again, I wish to emphasize that I am not suggesting that Mr. Earls be given physical custody of his children while he is incarcerated, or at any time in the foreseeable future. I do however believe that ADHS failed to consider less drastic alternatives than termination of his parental rights, like relative placement. Mr. Earls provided a list of relatives that ADHS completely ignored.
There are many compelling reasons for requiring ADHS to exhaust the possibility of placing children with relatives. Not the least of these reasons is that a parent has a fundamental constitutional right to parent his or her children without undue government interference. Troxel v. Granville , 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). I firmly believe in the wisdom of this decision. If given an opportunity, the state could always find a "better" parent-one that has more money, a better education, a nicer home, the "right" views on child rearing, etc. However, in practice, termination of parental rights in favor of stranger adoption is not the panacea that the majority seems to believe it is. See, e.g. , Taffner v. State , 2018 Ark. 99, 541 S.W.3d 430. In my view, there is nothing inherently wrong with an ongoing protective-services case; the state has innumerable ways of protecting the health and safety of children "in the system." When ADHS closes a case, not so much.
Finally, in my view, termination of parental rights is fundamentally contrary to the interests of society as a whole. Concomitant with the termination of parental rights is a termination of parental responsibility. Mr. Earls has never been required to be financially responsible for the twins. Instead, that burden has been shifted to the taxpayers. Foster parents receive a monthly check for the children that they house. Even after the children are adopted, the state pays a subsidy if multiple siblings are involved, if the child is older than a toddler, or if the child has "special needs." Additionally, the taxpayers of this state pay for the child's-or in this case, the children's-healthcare.
To Mr. Earls's credit, he took steps to acknowledge his paternity and ultimately accept responsibility for fathering these children. In my view it is quite elegiac that an agency of this state-and the courts-has declined to accept his offer. It is unjust to shift the burden of caring for an able-bodied man's children, when responsible parents in this state are struggling to care for their own children.
I respectfully dissent.

The circuit court made the following findings:
a. Other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juveniles in the custody of the father is contrary to the juveniles' health, safety, or welfare and that, despite the offer of appropriate family services, the father has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the father's circumstances that prevent the placement of the juveniles in the custody of the father. Ark. Code Ann. § 9-27-341 (b)(3)(vii)(a).
b. Jacob Earls is found by this Court to have subjected the juveniles to aggravated circumstances in that there is little likelihood that further services to the family will result in successful reunification. The Court finds that no additional services to the father will promote reunification.
c. Jacob Earls has been sentenced in a criminal proceeding for a period of time which would constitute a substantial period of the juveniles' life A.C.A. § 9-27-341(b)(3)(B)(viii)(a).
THE PETITION IS AMENDED TO REFLECT THIS FINDING.
d. Specifically, Jacob Earls does not have a relationship with the children. Mr. Earls has not seen, met, talked to, or sent letters to these children. Mr. Earls did not contribute to the dependency-neglect, but was unavailable to take custody of the children at the time of the removal. Mr. Earls did not remedy the circumstances which made him unavailable at the time of the removal. Mr. Earls has been incarcerated since October of 2014, which is as a substantial period of the juveniles' lives. Mr. Earls has not requested services from the Department since he has been incarcerated. The length of time it would require to wait for Mr. Earls to be released from prison, and then complete services to make himself available for custody of the juveniles is inappropriate.

I am mindful that Arkansas Code Annotated section 9-27-341 was amended in 2015 to add the following ground:
(b) That a juvenile has been adjudicated by the court to be dependent-neglected and has continued out of the home of the noncustodial parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that prevented the child from safely being placed in the parent's home, the conditions have not been remedied by the parent.
However, this ground for termination is dependent on the 2015 amendment to section 9-27-327, which concerns dependency-neglect adjudications, and contains the following language:
(B)(i) If the court finds that the juvenile is dependent-neglected, the court shall address whether a noncustodial parent contributed to the dependency-neglect and whether the noncustodial parent is a fit parent for purposes of custody or visitation.
(ii) If the court determines that the child cannot safely be placed in the custody of the noncustodial parent, the court shall make specific findings of fact regarding the safety factors that need to be corrected by the noncustodial parent before placement or visitation with the juvenile.
However, Mr. Earls was not identified as a parent at the time of adjudication. Accordingly, the circuit court made no "specific findings" regarding the "safety factors" that Mr. Earls was required to correct in order for ADHS to place the twins with him. Moreover, it is undisputed that ADHS made no effort to assist Mr. Earls in any way.