Cite as 2022 Ark. App. 64

# ARKANSAS COURT OF APPEALS
DIVISION II
No. CV-21-405

| | |
|---|---|
| FRIEDRICH DREHER<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br>APPELLEES | Opinion Delivered February 9, 2022<br><br>APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63JV-19-295]<br><br>HONORABLE ROBERT HERZFELD, JUDGE<br><br>REVERSED AND REMANDED |

## RITA W. GRUBER, Judge

Appellant Friedrich Dreher appeals from an order of the Saline County Circuit Court terminating his parental rights to his child, FD. On appeal, he argues that the Arkansas Department of Human Services (DHS) failed to prove any of the grounds relied on by the circuit court in the termination order because he was never found to be FD's parent. Both DHS and the attorney ad litem concede error in this case. We reverse and remand.

On October 9, 2019, DHS filed a petition for dependency-neglect alleging that it had exercised a seventy-two-hour hold on FD (03/24/2010), LD (06/25/2013), and MB (08/27/2017). The children were removed from the custody of their mother, Chelsea Bedoy.[1] Appellant was identified as FD's putative father, who has had significant contact with FD and whose name is on the birth certificate. The affidavit of the Arkansas State

---

[1]Bedoy is not a party to this appeal. Two other men were identified as the putative fathers of LD and MB.

Police investigator states that the Crimes Against Children Division received a report involving the children. The allegations in the referral included exposure to a live sex act, sexual contact, and threat of harm. As a result of the investigation, the children were placed in DHS custody. The affidavit of the family service worker (FSW) lists appellant as father of FD but also provided: "Legal: Putative, Friedrich and Chelsea were not married when [FD] was born, however, Friedrich, Sr. is on the birth certificate." The ex parte order for emergency custody was entered on October 10, 2019, listing appellant as "parent" in the caption. The probable-cause order entered October 15, 2019, indicates that appellant was present at the hearing and provides that appellant shall participate in DNA testing to establish paternity.

On January 3, 2020, the Saline County Circuit Court entered an adjudication order finding the children dependent-neglected and that the children were at a substantial risk of harm as a result of abuse, neglect, and parental unfitness. The order provides that appellant was served with a copy of the petition on October 13, 2019, and states that he is a defendant because he is a putative parent under the Arkansas Juvenile Code as he had significant contact with FD, and his rights as a putative parent had attached. He was not listed as being present at the December 2, 2019 adjudication hearing, but the order requires that appellant participate in DNA testing to establish paternity.

The order set the goal of reunification, and the parents were ordered to submit to random drug screens on request; participate and attend all visitation; schedule and keep all appointments; obtain and maintain a safe, suitable, and appropriate home for themselves and the juveniles; maintain an environment free from illegal substances or other health and safety

hazards; obtain and maintain adequate income to support themselves and the juveniles; request assistance for transportation forty-eight hours in advance; cooperate with DHS and CASA; permit DHS and CASA to inspect their home; participate in any service requested by DHS; maintain consistent contact with the juveniles and DHS; demonstrate stability and the ability to provide for the health, safety, and welfare of the juveniles; and keep DHS informed of their current addresses.

On June 15, after a May 15 review hearing, the circuit court ordered that the children remain in DHS custody and continued the goal of reunification with the concurrent goal of fictive-kin placement. The court found that appellant had not complied with the case plan and the court's orders and was not making progress toward alleviating or mitigating the cause of the out-of-home placement. Appellant was ordered to follow all court orders and the case plan. The circuit court found that DHS had complied with the case plan and had provided services to achieve the goal of reunification. A review hearing was scheduled for August 3.

Following the August 3 hearing, the court entered a review order on August 21. Appellant was not listed as being present at the hearing.[2] The court ordered that the children remain in DHS custody and continued the goal of reunification with the concurrent goal of fictive-kin placement. The court found that appellant had not complied with the case plan and court orders and had not had contact with DHS since June 2020. Appellant was

---

[2]The order provided that DNA testing of LD's putative father, which indicated zero percent probability of paternity, was entered into evidence. The court found that the putative father was not the biological father of LD and ordered that he be removed from the case.

3

ordered to follow the case plan and follow all orders. The circuit court again found that DHS had complied with the case plan and provided services to achieve the goal of reunification. The order stated that a permanency-planning hearing was set for September 28.

The circuit court entered a permanency-planning order on October 27, changing the goal of the case to adoption with DHS filing a termination petition. The court again found that appellant had not complied with the case plan and orders of the court and had not had contact with DHS since June 2020. It also noted that he was reportedly homeless and unemployed.

DHS filed its petition for termination of parental rights on December 16, seeking termination of Bedoy's rights to all three juveniles and appellant's rights as to FD. The petition noted that DNA testing of the putative parent named in the petition for LD was determined not to be the parent and that the putative parent of MB had not provided evidence to the court to establish paternity and no rights as a putative parent had attached. The grounds for termination included (1) failure to remedy; (2) failure to provide support and maintain meaningful contact; (3) subsequent factors; and (4) aggravated circumstances, specifically little likelihood that services to the family would result in reunification.

Appellant requested and was appointed counsel to represent him at the termination hearing. After several continuances, the termination hearing was held May 20, and the court entered a June 10 order terminating his parental rights based on three of the grounds alleged by DHS—failure to remedy, failure to provide meaningful support, and subsequent factors. Appellant filed a timely notice of appeal on June 16, 2021.

4

Pursuant to Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2021), an order forever terminating parental rights shall be based on clear and convincing evidence of one or more grounds. Ark. Code Ann. § 9-27-341(b)(3)(B). Proof of only one statutory ground is sufficient to terminate parental rights. *Bridges v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 50, 571 S.W.3d 506. The circuit court must also find by clear and convincing evidence that termination is in the best interest of the child, including consideration of the likelihood that the child will be adopted if the termination petition is granted and the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A).

Termination-of-parental-rights cases are reviewed de novo. *Wright v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 263, at 9, 576 S.W.3d 537, 543. Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. *Id.* The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In resolving the clearly erroneous question, we give due regard to the opportunity of the circuit court to judge the credibility of witnesses. *Id.* Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.* As with all issues when addressing child placement, the appellate court affords heightened

deference to the circuit court's superior position to observe the parties personally and to weigh credibility. *Dinkins v. Ark. Dep't of Hum. Servs.*, 344 Ark. 207, 215, 40 S.W.3d 286, 292–93 (2001).

Appellant argues that the termination decision must be reversed because DHS failed to prove he is FD's parent and thus failed to prove an essential element as to each ground on which the termination was granted. "Parent" means a biological mother, an adoptive parent, or a man to whom the biological mother was married at the time of conception or birth or who has signed an acknowledgment of paternity pursuant to section 9-10-120 or who has been found by a court of competent jurisdiction to be the biological father of the juvenile. Ark. Code Ann. § 9-27-303(41) (Repl. 2020).[3]

Although DHS pled four grounds in its petition to terminate parental rights, the circuit court found that DHS had established three of the grounds. These included Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)* ("That a juvenile has been adjudicated by the court to be dependent–neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent"); Ark. Code Ann. § 9-27-341(b)(3)(B)(ii)*(a)* ("The juvenile has lived outside the home of the parent for a period of twelve (12) months, and the parent has willfully failed to provide significant material support in accordance with the parent's means or to maintain

---

[3]We note that the definition of a parent was amended in 2021 to also include a man who is listed as parent on the birth certificate of the child. Ark. Code Ann. § 9-27-303(41)(C)(4). The amendment became effective July 28, 2021; however, this statute was not in effect at the time of the termination in this case.

meaningful contact with the juvenile"); and Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)* (That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent."). In support of his argument, appellant relies on *Earls v. Arkansas Department of Human Services*, 2017 Ark. 171, 518 S.W.3d 81, and *Northcross v. Arkansas Department of Human Services*, 2018 Ark. App. 320, 550 S.W.3d 919.

In *Earls*, DNA testing in a dependency-neglect proceeding revealed that Earls was the biological father to twins. The circuit court later appointed legal counsel to represent him; however, he was consistently recognized as a putative father, including in DHS's petition to terminate his parental rights. At the termination hearing, the circuit court stated that Earls's status as a parent needed to be addressed. Although there was a discussion regarding his status, no order was entered finding him to be the parent. Earls was listed as the putative father in the order terminating his parental rights. We affirmed the termination, but our supreme court reversed and remanded on a petition for review, holding that the record did not demonstrate that Earls's legal status "as a biological parent was established to apply to the twelve-month time period described in the statute." *Earls*, 2017 Ark. 171, at 11, 518 S.W.3d at 88. The supreme court concluded that Earls's rights had not attached to

7

thereafter be terminated. The decision noted that there was no order in the record establishing Earls's legal status.

In *Northcross*, the circuit court ordered the father to submit to DNA testing and to establish paternity. In an amended termination petition, DHS asserted that that DNA testing revealed that Northcross was the biological father; he had been appointed counsel at the permanency-planning hearing; and he had sufficient contacts with the children for parental rights to attach. DHS asked for a specific finding whether parental rights had attached, and if so, requested that those rights be terminated. The termination order referred to Northcross as a putative father. Relying on *Earls*, we reversed the termination order, holding that Northcross's rights could not be terminated without a finding establishing his status as a parent. We stated, "This court cannot make a finding regarding paternity when the circuit court deliberately did not do so." *Northcross*, 2018 Ark. App. 320, at 13, 550 S.W.3d at 925 (referring to circuit court's having reopened the hearing to comment that Northcross had not petitioned to establish paternity).

In addition to the cases cited by appellant, this court also reversed and remanded a termination in *Burks v. Arkansas Department of Human Services*, 2021 Ark. App. 309, at 11, 634 S.W.3d 527, at 533. There, we stated that the circuit court made Burks's legal status an issue but failed to resolve the matter before terminating his parental rights. We noted that pursuant to supreme court precedent in *Earls*, the circuit court was required to make a specific finding that Burks is the parent before terminating his rights. *Id. See also Tovias v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 228, 575 S.W.3d 621 (reversing and remanding due to DHS's failure to establish that Tovias was a parent under statute where, although

there was a finding of his legal status, there was no evidence in the record to support it); *Terry v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App.591, 591 S.W.3d 824 (reversing and remanding where DHS failed to establish Terry's parental status, and the circuit court did not make an express finding that Terry was the juvenile's parent even when his parental status was never questioned throughout the case).

In the present case, appellant was identified as the putative parent of FD at the outset of the case. The petition for dependency-neglect identified appellant as the putative parent of FD who had significant contacts with FD and whose name appeared on the birth certificate. Appellant was listed as "parent" in the caption of the pleadings, which was the same as the other defendants, including Bedoy and the putative fathers of the other children. In the probable-cause order, the court identified appellant as "putative father" and ordered him to establish paternity through DNA testing. The adjudication order provided that "because [appellant] is a putative parent for the purposes of the Arkansas Juvenile Code as he had significant contact with the juvenile [FD], his rights as a putative parent have attached." It again ordered that appellant participate in DNA testing to establish paternity. In the August 21, 2020 review order, the court addressed DNA results of one putative father, indicating that DNA testing revealed the putative father was not the biological father and ordered that he be removed from the case. The petition for termination referred to appellant as the parent and father. The order terminating Bedoy's rights also identified appellant as father and stated that he requested counsel be appointed. Counsel was appointed, and termination as to appellant was bifurcated and continued. Finally, the order terminating appellant's parental rights found appellant to be a "putative parent" only whose

9

"rights as a putative parent had attached." None of the orders make a finding of paternity or that appellant is FD's "parent."[4]

At the May 20, 2021 termination hearing, the court asked if appellant wanted a DNA test, and his counsel stated that he admits that he is FD's father. However, at no point did the circuit court make a finding that appellant was a parent for purposes of the termination process. Although appellant's counsel stated at the termination hearing that he admits he is FD's father, case law indicates that "a lay person's reference to himself as a father—or even a DNA test showing a 99.9% probability that a man is the biological father of a child—is insufficient to establish 'parent' status for purposes of the termination process until and unless there is *an express finding by the circuit court* that the man is, in fact, a parent." *Terry v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 591, at 8, 591 S.W.3d 824, 829 (additional emphasis added) (citing *Northcross v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 320, 550 S.W.3d 919; *Earls v. Ark. Dep't of Hum. Servs.*, 2017 Ark. 171, 518 S.W.3d 81).

Each of the grounds relied on by the circuit court to terminate appellant's rights to FD requires DHS to prove he is a parent. For termination purposes, "parent" means a biological mother, an adoptive parent, or a man to whom the biological mother was married at the time of conception or birth or who has signed an acknowledgment of paternity pursuant to section 9-10-120 or who has been found by a court of competent jurisdiction to be the biological father of the juvenile. Ark. Code Ann. § 9-27-303(41). The record in

---

[4]As noted by appellant, the legislature amended Ark. Code Ann. § 9-27-341(b)(3)(B) in 2019 to add a ground for termination of a putative parent's rights. This section was again amended in the 2021 legislative session. However, DHS did not allege the ground for termination in the present case.

this case does not support any of these requirements. Instead, the record indicates that appellant is listed on the birth certificate (although a copy does not appear in the record) and that his attorney made a statement that appellant admits he is FD's father. DHS failed to carry its burden to prove that appellant is FD's parent, and the circuit court did not make a finding that appellant is FD's parent. Accordingly, we reverse and remand for proceedings consistent with this opinion.

Reversed and remanded.

VAUGHT and MURPHY, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Andrew Firth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.