RITA W. GRUBER, Chief Judge
Justin Chatley appeals from the Benton County Circuit Court's order denying his request to set aside an adoption. The court denied Justin's petition based on its determination that he had failed to provide adequate information to establish that he had standing. On appeal, he contends that there was insufficient evidence to support the denial of his petition and that the adoption violates his right to due process. We hold the circuit court did not err in *526 concluding that Justin lacked standing to challenge the adoption, and we affirm its order denying his petition.
The child adopted in this case, ZK, was born on July 6, 2015, to Dawn and Allen Williams. The Williamses were married when ZK was conceived. On June 26, 2016, almost a year after ZK's birth, Dawn and Allen each signed a relinquishment, termination, and consent to adoption. In Allen's relinquishment, he specifically stated that he and Dawn were married "prior to and during the time of conception" of ZK and that he was ZK's biological father. On June 29, 2016, Brandy and Nathan Key filed a petition to adopt ZK. On August 9, 2016, after a favorable home study had been conducted on the Keys' home, the circuit court entered an order granting the adoption.
Nine months later, on April 3, 2017, Justin filed a petition to vacate the final decree of adoption and a supporting brief claiming that he was ZK's biological father and had maintained a significant custodial, personal, and financial relationship with the child when Dawn and ZK lived with Justin from August 2015 through mid-May 2016. The circuit court did not rule on the petition for four months, allowing Justin a reasonable time to establish standing to proceed in the matter.
On July 24, 2017, Justin filed an additional brief in support of his petition and attached the following documents. He filed an affidavit stating that he and Dawn had an on-and-off relationship from 2014 through sometime in 2016; Dawn told him in December 2014 that she was pregnant with his child; they "broke up" in February 2015; in August 2015, several weeks after ZK's birth, Dawn moved in with Justin and he provided financial support; Justin performed a "home paternity test" on ZK in March 2016; at some point thereafter, he claims that he unsuccessfully attempted to register with the Arkansas Putative Father Registry; and in June 2016, Justin hired an Oklahoma lawyer for "visitation and custody." He attached the results from the home paternity test purporting to indicate that he was the father of ZK. He attached a "Petition for Judicial Order Determining Paternity, Custody and Visitation" that had been filed in Oklahoma on September 20, 2016. He also attached an affidavit from his Oklahoma attorney, stating that Justin had diligently attempted to provide service information for Dawn but was unable to discover Dawn's whereabouts in Texas until August 2016, at which point Dawn was served with Justin's Oklahoma petition for paternity. The attorney also stated that Justin did not discover that ZK had been adopted until Dawn filed an answer in the paternity lawsuit so stating. Finally, Justin filed the affidavit of his parents, confirming that Justin and Dawn had a relationship and that Dawn and ZK had lived with Justin for a period of nine months. Justin did not produce any evidence that he had registered with the Arkansas Putative Father Registry or any other putative-father registry, filed a petition for paternity in any Arkansas court, or obtained an order from any court establishing his rights as the father of ZK.
On July 31, 2017, the circuit court denied Justin's petition to vacate, finding that he had failed to establish standing to proceed, providing specifically:
1. The Final Decree of Adoption was filed in this matter on August [9], 2016.
2. The Court allowed a period of time for the Petitioner to provide the Court with adequate proof of his good faith efforts to register as a putative father and to provide adequate information to establish standing to proceed.
3. The Court has reviewed all information provided by the Petitioner and has *527 determined that it is not adequate to establish standing nor is it adequate for the Court to find a reasonable basis to allow Petitioner to proceed.
We are reviewing the circuit court's finding that Justin did not have standing to pursue his petition. Only a person who has a personal stake in the outcome of a controversy has standing. Pulaski Cty. v. Ark. Democrat-Gazette, Inc. , 371 Ark. 217, 220, 264 S.W.3d 465, 467 (2007). The question of standing is a matter of law for this court to decide, and the appellate courts review questions of law de novo. Hinton v. Bethany Christian Servs. , 2015 Ark. App. 301, at 3, 462 S.W.3d 361, 362. In making a determination regarding standing, we must interpret several statutes. We review issues of statutory construction de novo, as it is for this court to decide what a statute means. DaimlerChrysler Corp. v. Smelser , 375 Ark. 216, 289 S.W.3d 466 (2008). In this regard, we are not bound by the circuit court's decision; however, in the absence of a showing that the circuit court erred, its interpretation will be accepted as correct on appeal. Id. With these standards in mind, we turn to the arguments presented on appeal.
I. Statutory Law
We find it helpful to first set forth the relevant Arkansas statutes. Arkansas Code Annotated section 9-9-206 provides in pertinent part as follows:
(a) Unless consent is not required under § 9-9-207, a petition to adopt a minor may be granted only if written consent to a particular adoption has been executed by:
(1) The mother of the minor;
(2) The father of the minor if:
(A) The father was married to the mother at the time the minor was conceived or at any time thereafter;
(B) The minor is his child by adoption;
(C) He has physical custody of the minor at the time the petition is filed;
(D) He has a written order granting him legal custody of the minor at the time the petition for adoption is filed;
(E) A court has adjudicated him to be the legal father prior to the time the petition for adoption is filed;
(F) He proves a significant custodial, personal, or financial relationship existed with the minor before the petition for adoption is filed ; or
(G) He has acknowledged paternity under § 9-10-120(a);
Ark. Code Ann. § 9-9-206(a)(1), (2) (Repl. 2015) (emphasis added).
Arkansas Code Annotated section 9-9-207 provides:
(a) Consent to adoption is not required of:
(1) a parent who has deserted a child without affording means of identification or who has abandoned a child;
(2) a parent of a child in the custody of another, if the parent for a period of at least one (1) year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree;
(3) the father of a minor if the father's consent is not required by § 9-9-206(a)(2) ;
(4) a parent who has relinquished his or her right to consent under § 9-9-220;
*528 (5) a parent whose parental rights have been terminated by order of court under § 9-9-220 or § 9-27-341;
(6) a parent judicially declared incompetent or mentally defective if the court dispenses with the parent's consent;
(7) any parent of the individual to be adopted, if the individual is an adult;
(8) any legal guardian or lawful custodian of the individual to be adopted, other than a parent, who has failed to respond in writing to a request for consent for a period of sixty (60) days or who, after examination of his or her written reasons for withholding consent, is found by the court to be withholding his or her consent unreasonably;
(9) the spouse of the individual to be adopted, if the failure of the spouse to consent to the adoption is excused by the court by reason of prolonged unexplained absence, unavailability, incapacity, or circumstances constituting an unreasonable withholding of consent;
(10) a putative father of a minor who signed an acknowledgement of paternity but who failed to establish a significant custodial, personal, or financial relationship with the juvenile prior to the time the petition for adoption is filed; or
(11) a putative father of a minor who is listed on the Putative Father Registry but who failed to establish a significant custodial, personal, or financial relationship with the juvenile prior to the time the petition for adoption is filed.
(b) Except as provided in §§ 9-9-212 and 9-9-224, notice of a hearing on a petition for adoption need not be given to a person whose consent is not required or to a person whose consent or relinquishment has been filed with the petition.
Ark. Code Ann. § 9-9-207.
II. Standing
The issue before us is whether Justin has standing to pursue his petition to vacate the adoption. In other words, was he a person entitled to notice or whose consent was required before the circuit court could enter an adoption decree regarding ZK? He did not register with the Arkansas Putative Father Registry or sign an acknowledgement of paternity, both of which would have triggered the notice provisions of Ark. Code Ann. § 9-9-212(a)(4)(C). He argues, however, that his consent was required, and thus that he was entitled to notice pursuant to Ark. Code Ann. § 9-9-206(a)(2)(F) as a "father" who had proven "a significant custodial, personal, or financial relationship existed" with ZK before the adoption petition was filed. We express no opinion regarding the significance of the relationship between Justin and ZK and assume for purposes of this appeal that he has established, or could establish, that a significant relationship existed. We hold, however, that Justin has not demonstrated that he is a "father" within the purview of subsection 206(a)(2).
Turning to the relevant consent statutes, we note that in Ark. Code Ann. § 9-9-207(a), providing from whom consent is not required for adoption, our legislature used the terms "parent," "father," "legal guardian or lawful custodian," "spouse," and "putative father" in each of the eleven separately enumerated subsections, suggesting *529 that it perceived a difference between the terms putative father and father for purposes of the adoption code. In Ark. Code Ann. § 9-9-206(a)(2), which Justin claims to fall within, the statute uses the term "father." Thus, we must determine what is meant by the term "father" and whether Justin presented evidence to satisfy the statute and thereby demonstrate standing to proceed with his petition.
A "putative father" is defined throughout the Arkansas Code as any man not legally presumed or adjudicated to be the biological father of a child but who claims or is alleged to be the biological father of the child. See, e.g. , Ark. Code Ann. § 9-9-501(11) (Repl. 2015); Ark. Code Ann. § 16-43-901(h) (Repl. 1999). Justin claims to be the biological father of ZK, but he is not legally presumed, nor has he been adjudicated, to be ZK's biological father. Thus, by statutory definition, Justin is a putative father. Further, and of particular importance in this case, ZK was born with a presumed father, Allen. The fact that ZK was adopted a year after his birth, and that Allen consented to that adoption, does not change that fact. At the time ZK was conceived and born, Dawn and Allen Williams were married. It is a general principle of Arkansas law that a child is presumed legitimate if the parents were married at the time of the child's conception or birth. R.N. v. J.M. , 347 Ark. 203, 211, 61 S.W.3d 149, 153 (2001).
A putative father has a right to file a petition for paternity even when the child was conceived during marriage, and the presumption that the father of the child is the man married to the mother may be rebutted. See R.N., supra . We do not decide today whether or to what extent that right exists after the child has been adopted because the presumption has never been rebutted in this case. Here, the child was born to a married couple, and there has been no paternity action to rebut the presumption that Allen was the father before ZK was adopted. A child may have only one legal father. Howerton v. Ark. Dep't of Human Servs. , 2016 Ark. App. 560, at 10-11, 506 S.W.3d 872, 878-79. That was Allen, and he consented to the adoption.
In an attempt to demonstrate that he had standing, Justin produced three affidavits-his, his parents', and his lawyer's-alleging that he was ZK's father and had developed a relationship with ZK. He also provided a report from a "home paternity test" that he claimed resulted from samples taken from him and ZK, but the report Justin provided did not name the individuals tested and specifically made the following disclaimer:
Since the samples were not collected under a strict chain of custody by a third neutral party, and the Laboratory cannot verify the origin of the samples, this test result may not be defensible in a court of law for the establishment of paternity and other legally related issues. The tested parties expressly understand that the result from this test is only for personal knowledge and curiosity.
Justin cites In re Adoption of Baby Boy B , 2012 Ark. 92, 394 S.W.3d 837, as authority for his argument that a father who establishes a significant relationship with the child is "protected" and fits within the consent requirements of section 9-9-206(a)(2)(F) even if he has not registered with the putative-father registry. First, we do not read the court's opinion for that proposition. Moreover, the facts in that case are distinguishable from those here. The mother in Baby Boy B was not married when the child was conceived or born. Therefore, the child was not born legitimate in that case, unlike ZK. Further, the only father in Baby Boy B was JEM, the *530 appellant in that case, and his biological connection to the child was not disputed. Finally, unlike Justin, who failed to register with any putative-father registry either before or after ZK's birth, JEM filed with the putative-father registries in Missouri, Texas, Arkansas, and Illinois before the child was ever born, and he filed two separate paternity and custody actions before the adoption petition was filed. Baby Boy B does not hold that a putative father may establish parental rights to a child and be entitled to challenge an adoption without first demonstrating that he is, in fact, the child's "father" for purposes of Ark. Code Ann. § 9-9-206(a)(2), and Justin has cited no other case so holding. Indeed, our research of recent adoption cases regarding the rights of putative fathers all involved unmarried mothers. Under a plain reading of Arkansas Code Annotated section 9-9-206(a)(2)(F), not just "anyone" who proves the existence of a significant relationship with the child is required to consent; rather, the statute requires only a "father" who proves the existence of such a relationship to consent. When the child already has a presumed legal father because his mother is married, another man who had a sexual relationship with the mother during the time of conception and a relationship with the child after birth is not, without more, entitled to notice of an adoption. He must fall within the statute's purview.
Although he knew Dawn was pregnant with his child, knew Dawn was married before the child's birth, and claims to have established a relationship with ZK after his birth, Justin failed to file with the putative-father registry of Arkansas (or any state) and failed to file a paternity petition in Arkansas to establish his interest in ZK either before or after the adoption. This is in spite of the circuit court's request that he provide proof that he had made a good-faith effort to register and that he had standing to contest the adoption. There are specific legal avenues to establish paternity, and there are specific statutes governing notice and consent in an adoption.[1] These statutes are designed to protect the State's interest in ensuring the child's need for permanence and stability. A putative father's interest must be balanced against this important goal. Recognizing these competing interests, Justice Brown quoted the following passage from the Vermont Supreme Court:
To conclude that petitioner acted promptly once he became aware of the child is to fundamentally misconstrue whose timetable is relevant. Promptness is measured in terms of the baby's life not by the onset of the father's awareness. The demand for prompt action by the father at the child's birth is neither arbitrary nor punitive, but instead a logical and necessary outgrowth of the State's legitimate interest in the child's need for early permanence and stability.
Escobedo v. Nickita , 365 Ark. 548, 559, 231 S.W.3d 601, 609 (2006) (Brown, J., concurring) (quoting In Re C.L., Juvenile , 178 Vt. 558, 878 A.2d 207, 211 (2005) (quoting Robert O. v. Russell K. , 80 N.Y.2d 254, 590 N.Y.S.2d 37, 604 N.E.2d 99 (1992) ) ).
ZK has now been with his adoptive parents, the Keys, for over two years. We hold that Justin failed to establish that he *531 was ZK's "father" within the meaning of Ark. Code Ann. § 9-9-206(a) ; thus, he was not required to consent to ZK's adoption.
We do not address Justin's argument that the adoption violated his right to due process because he neither argued this to the circuit court nor obtained a ruling on the issue. Brookewood, Ltd. P'ship v. DeQueen Physical Therapy & Occupational Therapy, Inc. , 2018 Ark. App. 204, at 13, 547 S.W.3d 461, 469 (holding that we will not review arguments not raised below or on which the circuit court has not ruled).
Affirmed.
Glover and Murphy, JJ., agree.

We recognize that any putative father who has registered with the Putative Father Registry is entitled to notice of an adoption petition and hearing pursuant to Ark. Code Ann. § 9-9-212(a)(4)(C). We note, however, that only in adoptions involving a child "born to a mother unmarried at the time of the child's birth" is there a requirement that a certified statement regarding information about the child contained in the Putative Father Registry, or the absence of any such information, be obtained before entry of an adoption decree. Ark. Code Ann. § 9-9-224 (Repl. 2015).