Cite as 2021 Ark. App. 263

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-20-521

| | |
|---|---|
| VICTORIA ALLEN, TINA PANKEY, AND DONALD LONG<br><br>APPELLANTS<br><br>V.<br><br>JESSE ALLEN<br><br>APPELLEE | **Opinion Delivered** May 26, 2021<br><br>APPEAL FROM THE RANDOLPH COUNTY CIRCUIT COURT [NO. 61DR-19-111]<br><br>HONORABLE MICHELLE C. HUFF, JUDGE<br><br>AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Appellants Victoria Allen, Tina Pankey, and Donald Long appeal from the order of the Randolph County Circuit Court awarding custody of minor child EA to appellee Jesse Allen. The circuit court found that Jesse is EA's legal father, denied Donald's petition for paternity, denied Tina's petition for guardianship, and denied Victoria's request for primary custody. Appellants now challenge the circuit court's findings as to paternity, guardianship, and custody, and we affirm.[1]

Victoria and Jesse married in October 2013. Jesse was assigned the female sex at birth, but he has been living as a man since 2013. Victoria is the natural mother of EA, who was born in January 2015. EA was conceived via at-home artificial insemination. According to

---

[1]Below, Victoria and Tina were represented by the same attorney and Donald was represented by a different attorney. On appeal, all three appellants are represented by the same attorney and have filed a single brief.

Jesse, the couple first tried to conceive using the sperm of his friend, Josh, but it did not result in pregnancy. They then tried conceiving with Donald, Victoria's best friend who was also the couple's roommate. Jesse said that he inserted a sample provided by Donald and that a pregnancy resulted after the second attempt. Jesse testified that it was "a given" that Victoria and he would be mom and dad to the child, and they discussed that Donald would be known as an uncle. Jesse said that he filled the role of father during the pregnancy and after EA was born. He went to most of Victoria's doctor's appointments, he was present at EA's birth, EA was given his middle and last name, and Jesse, Victoria, and EA took family photos together. Jesse is listed as EA's father on her birth certificate. The couple separated in September 2015. Victoria filed for divorce and the couple signed a custody and property-settlement agreement, but the divorce was ultimately dismissed. The agreement listed Jesse as Victoria's husband, stated that there was one child born of their marriage, awarded him standard visitation of EA, and provided that he would pay child support.

Jesse testified that in the three years following the separation, he saw EA quite frequently. In November 2018, Jesse contacted an attorney because he was concerned that Victoria was using drugs and that she and EA were moving around a lot. On January 8, 2019, Jesse was visiting EA in Missouri, where Victoria and EA were living with a cousin. During that visit, Victoria was pulled over and arrested on drug charges. Jesse then took EA home with him, and EA stayed in his care for the next fifteen days while Victoria was incarcerated. Tina, Victoria's mother, filed a petition to be appointed EA's guardian on January 16, 2019.

Jesse spoke to Victoria while she was incarcerated, and upon her release, Victoria took EA out to eat. Instead of returning with EA as she said she would, however, Victoria disappeared with her. Jesse said that he found out a few days later that Victoria and EA were in Texas. Aside from a FaceTime call in March, Victoria ignored his persistent requests to see EA and eventually blocked his phone number. Jesse said that Victoria told him that she had to disappear because Tina was trying to take EA from her. He introduced text messages that showed Victoria either evading his questions or failing to respond to him. Jesse filed for divorce in July 2019 and sought primary custody of EA. Victoria counterclaimed for divorce and sought custody of EA. The divorce case and the guardianship case filed by Tina were subsequently consolidated.

A hearing was held in October 2019. Victoria consented to Tina's having guardianship of EA. Because Jesse had not had contact with EA since January, the court awarded a temporary guardianship to Tina. Jesse was ordered to pay child support and was awarded increasing visitation to "reintroduce" him to EA. In December 2019, Donald filed a motion for leave to intervene and a petition for paternity asserting that he should be declared EA's legal father and awarded custody.

A final hearing was held in February 2020. Donald's attorney argued that a putative father has standing to intervene in a divorce action to seek the establishment of paternity so long as it is in the child's best interest. Accordingly, he argued that the court should grant the motion to intervene and then determine, on the basis of the evidence, whether granting the paternity petition is in the best interest of EA. The court granted the motion to intervene over Jesse's objection.

Jesse testified as to the history of the case as outlined above. He said that he had always been called dad by EA and Victoria until he saw EA in October 2019. He denied ever having heard EA or Victoria refer to Donald as dad; instead, he was referred to as EA's uncle. Jesse said that he had remained in contact with Donald after they were no longer roommates, and he had paid Donald to babysit EA on occasion. He said that his visits with EA had gone well, although Victoria and Tina had denied him some phone contact and visitation, and that EA had started calling him dad again. Jesse wanted full custody and said that he would not keep Victoria or Tina away from EA.

Victoria testified that she had used methamphetamine regularly for about six months, but she had last used it in February 2019. She had been participating in drug treatment and had recently started a job. She said that her drug charges would be dropped if she did not get any more felony charges, but she had recently learned that there was a warrant for her arrest in Missouri for "some sort of violation." Victoria said that she no longer consented to a guardianship because there was no longer a reason that she could not take care of EA by herself. On examination by her attorney, who was also Tina's attorney, Victoria said that if the court found it in EA's best interests to place "conditions" on her rights, she was willing to work with Tina.

Victoria said that she made the decision to have a baby on her own and told Jesse that she was going to have a baby with or without his participation. She said that she and Donald had planned since they were adolescents to help each other have children. She said the intent was for Jesse to be EA's dad in the "hands on" sense, but it was always understood that Donald was her dad and would be involved in her life. Victoria said that Donald has

4

spent more time with EA than Jesse, noting that she and EA lived with Donald after her separation from Jesse, but she said that Jesse saw EA a lot after their separation. She acknowledged that she stopped letting Jesse see EA after her incarceration in January 2019.

Tina testified that she had filed for guardianship of EA because Victoria was using drugs and incarcerated, and she thought EA would be more comfortable with her than with Jesse. Tina said that Victoria is now a fit parent, and she did not know how to answer when questioned about why she was still pursuing the guardianship; she did not think Jesse was unfit either. Tina acknowledged that although she started to suspect that Victoria was using drugs beginning in August 2018, she did not keep EA away from Victoria. Tina said that EA has been in her custody when she is not working since January 2019; the rest of the time, EA is with Victoria, and Victoria and EA had been living with Tina's brother.

Donald testified that when EA was conceived, he was under the impression that they would have a nontraditional family unit. He said that EA calls him dad, that they have had consistent contact with each other, and that he has provided for EA. He felt that it would be in EA's best interest to be either with Tina or with him.

Jesse's attorney argued that according to Arkansas law on artificial insemination and caselaw from Arkansas and other jurisdictions, EA is the natural, legitimate child of Jesse because of his marriage to Victoria, and Donald's paternity petition should be denied. Both Jesse's and Victoria's counsel argued that it was in EA's best interest to award custody to their respective clients. Donald's counsel argued that Jesse could not claim paternity based on Arkansas's statutes on artificial insemination because there were no written consents

obtained, and the procedure was not performed by a physician. He argued that Donald is the biological father and a fit parent.

The circuit court denied Donald's petition for paternity. The court found that it was the intent of the parties at the time of EA's conception and birth that Jesse be her father. The court ruled that Jesse and Victoria are the natural, legal parents of EA. The court denied Tina's petition for guardianship upon finding that a guardianship was not warranted. The court then found that the custody decision would be based on a best-interest analysis and awarded Jesse primary custody of EA. The court found that he has a long history of steady employment and stable housing and no criminal history; had demonstrated that he loves and cares for EA and does not require help to raise her; and had demonstrated that he is more likely to foster a relationship between EA and Victoria. The court noted that Victoria, on the other hand, had demonstrated a lot of immaturity, had not maintained steady employment, did not have her own place to live, had drug problems in the recent past, and had an active warrant in Missouri. Victoria was awarded standard visitation.[2]

## I. *Paternity*

Appellants argue that due to noncompliance with the two Arkansas statutes addressing artificial insemination, there is no basis for declaring Jesse to be EA's natural father and no basis for depriving Donald of his natural parental rights. Arkansas Code Annotated section 9-10-202 (Repl. 2020) provides that artificial insemination of a woman shall only

---

[2]The court's order, entered February 27, 2020, noted that it had ordered Victoria to exchange physical custody of EA with Jesse on February 21, the day following the hearing. However, Victoria had failed to deliver EA and had refused attempts at communication; therefore, the court had entered an order for law enforcement to assist in procuring custody and an order to appear and show cause with body attachment.

be performed under the supervision of a licensed physician. Ark. Code Ann. § 9–10–202(a). "Prior to conducting the artificial insemination, the supervising physician shall obtain from the woman and her husband or the donor of the semen a written statement attesting to the agreement to the artificial insemination, and the physician shall certify their signatures and the date of the insemination." Ark. Code Ann. § 9–10–202(b). "Any child born to a married woman by means of artificial insemination shall be deemed the legitimate natural child of the woman and the woman's husband if the husband consents in writing to the artificial insemination." Ark. Code Ann. § 9–10–201(a) (Repl. 2020). Appellants argue that because there was no written agreement as required by the statutes, Donald never waived his parental rights.

Although not cited by appellants, we note subsection (b) of section 9–10–201, which provides as follows:

> A child born by means of artificial insemination to a woman who is married at the time of the birth of the child shall be presumed to be the child of the woman giving birth and the woman's husband except in the case of a surrogate mother . . . .

Ark. Code Ann. § 9–10–201(b). While subsection (a) provides that a child "shall be deemed" the child of husband who consents in writing, subsection (b) creates a presumption in the absence of written consent. This is in line with the general principle of Arkansas law that a child is presumed legitimate if the parents were married at the time of the child's conception or birth. *In re Adoption of Z.K.*, 2018 Ark. App. 533, 565 S.W.3d 524. As a man not legally presumed or adjudicated to be the biological father of a child but who claims or is alleged to be the biological father, Donald is a putative father. *See id.* A putative father has a right to file a petition for paternity even when the child was conceived during marriage, and the

7

presumption that the father of the child is the man married to the mother may be rebutted. *Id.* However, the presumption of legitimacy of a child born during a marriage is a presumption to protect the child whose interests should be considered first and foremost. *R.N. v. J.M.*, 347 Ark. 203, 61 S.W.3d 149 (2001). While this presumption is rebuttable according to law, the challenging party must first show that rebutting the presumption is in the best interest of a child whose parents were married at the time the child was born. *Id.*

The sole Arkansas case analyzing sections 9-10-201 and 9-10-202 is *Brown v. Brown*, 83 Ark. App. 217, 125 S.W.3d 840 (2003). In *Brown*, the husband in a divorce case argued that the children born to his wife by means of artificial insemination were not his. It was undisputed that the husband did not execute any written consent pursuant to the statutes, and he claimed that he did not agree to the artificial insemination. Nevertheless, the circuit court found that he was barred by the doctrine of equitable estoppel from denying the children were his. This court agreed that the lack of written consent was not dispositive and that the husband was estopped to deny that he was the father.

We hold that, as in *Brown*, the lack of written consent is not dispositive and that Donald failed to rebut the presumption that Jesse is EA's father. Rebutting the presumption that Jesse is the father is not in EA's best interest in light of the parties' intent when EA was conceived and their actions after her birth. As the circuit court found in its oral ruling and in the order, the parties never intended for Donald to act as EA's father, Victoria's testimony that Jesse was not part of the plan to have a baby was not credible, the parties intended that Jesse would be EA's father, and Donald's involvement with EA did not rise to the level of a father.

The circuit court also stated that the estoppel theory in *Brown* applied here. Our courts have defined equitable estoppel as a judicial remedy by which a party may be precluded by its own act or omission from asserting a right to which it otherwise would have been entitled, or pleading or proving an otherwise important fact. *McCrillis v. Hicks*, 2017 Ark. App. 221, 518 S.W.3d 734. The elements of equitable estoppel are as follows: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting estoppel has a right to believe the other party so intended; (3) the party asserting estoppel must be ignorant of the facts; (4) the party asserting estoppel must rely on the other's conduct to his detriment. *Brown, supra.*

Applying the evidence in accordance with the circuit court's credibility determinations, we acknowledge that (1) Donald knew that Victoria and Jesse were using his sperm to create a baby and that Jesse would be the father; (2) Donald took no action to assert parental rights for nearly five years while Jesse assumed the role of father in day-to-day life, in the prior divorce settlement agreement, and in the guardianship case; (3) Jesse was ignorant of the facts asserted by Donald at the hearing, i.e., that Donald intended to be EA's father; and (4) Jesse relied to his detriment on Donald's conduct by proceeding with the artificial insemination and forming a father-daughter relationship with EA. We give due deference to the circuit court's credibility determinations. *McCrillis, supra.* Given the circuit court's findings regarding the parties' intent when EA was conceived and their actions after her birth, we hold that the elements of estoppel were established.[3] *See McCrillis, supra*

---

[3]In their reply brief, appellants contend that estoppel was used defensively in *Brown* and that Jesse should not be permitted to use estoppel offensively. The cited case, however, discusses the use of collateral estoppel, not equitable estoppel.

(holding that mother of child born via artificial insemination to same-sex couple was equitably estopped from denying former partner her promised role as coparent).

To rebut the presumption as to Jesse's paternity of EA, Donald had to show that it was in EA's best interest. The evidence here, however, supports a conclusion that rebutting the presumption is not in EA's best interest and that Donald should be estopped from asserting that paternity should be adjudicated in him instead of Jesse. Accordingly, we find no error in the circuit court's dismissal of Donald's paternity petition.

## II. *Guardianship*

In denying Tina's guardianship petition, the circuit court's order states that "custody or guardianship is only awarded to grandparents when there is no alternative, and that is not the case here. The court does not find either [Jesse] or [Victoria] unfit; therefore, a guardianship is not warranted." Appellants argue that the circuit court erred by disqualifying Tina from consideration on the wrong legal standard and that the court should be instructed to consider EA's best interest in deciding whether custody with Tina overcomes any preference for custody with a parent.

In support of their argument, appellants rely on two cases for the proposition that the preference in custody cases to award a child to its biological parent is not absolute, and the controlling factor is the best interest of the child. *Freshour v. West*, 334 Ark. 100, 971 S.W.2d 263 (1998); *Dunham v. Doyle*, 84 Ark. App. 36, 129 S.W.3d 304 (2003). Appellants' arguments based on custody law are misplaced, however, because Tina sought a guardianship, not custody.

Before appointing a guardian, the court must be satisfied that, among other things, a guardianship is desirable to protect the interests of the incapacitated person and the person to be appointed guardian is qualified and suitable to act as such. Ark. Code Ann. § 28-65-210 (Repl. 2012). Pursuant to Arkansas Code Annotated section 28-65-204(a) (Repl. 2012), the parents of an unmarried minor, or either of them, if qualified and, in the opinion of the court, suitable, shall be preferred over all others for appointment as guardian of the person. There is no standard of fitness or unfitness when applying the preference for a natural parent to serve as guardian over a third party; the sole considerations are the child's best interest and whether the natural parent is qualified and suitable. *Fletcher v. Scorza*, 2010 Ark. 64, 359 S.W.3d 413.

It is true that a court can award a guardianship to a grandparent even when it does not find that the natural parent is unfit. *See Furr v. James*, 2013 Ark. App. 181, 427 S.W.3d 94. Here, however, the court found that a guardianship was not warranted. Even Tina could not articulate why a guardianship was needed at this point. The court found that EA has two fit parents who both sought custody and that custody would be determined on the basis of EA's best interest. In making this determination, the court found that Jesse loves and cares for EA, would be able to raise her on his own, and would foster a relationship between EA and Victoria. The evidence supports the circuit court's determination that custody with Jesse was in EA's best interest, and we hold that the court did not err in denying Tina's petition for guardianship.

III. *Joint Custody*

Appellants argue that the circuit court erred in failing to consider joint custody despite the statutory preference for it. *See* Ark. Code Ann. § 9-13-101(a)(1)(A)(iii) (Repl. 2020) ("In an action for divorce, an award of joint custody is favored in Arkansas."). Although neither Victoria nor Jesse requested joint custody below, appellants argue that joint custody would be a reasonable way to maximize the care and support EA can receive.

Child-custody matters are reviewed de novo on appeal, but the circuit court's findings are not reversed unless they are clearly erroneous. *Janjam v. Rajeshwari*, 2020 Ark. App. 448, 611 S.W.3d 202. Whether a circuit court's findings are clearly erroneous turns in large part on the credibility of the witnesses, and special deference is given to the circuit court's superior position to evaluate the witnesses, their testimony, and the child's best interest. *Id*. There are no cases in which the circuit court's superior position, ability, and opportunity to observe the parties carry as great a weight as those involving minor children. *Id*.

The primary consideration in child-custody cases is the welfare and best interest of the child, with all other considerations being secondary. *Id*. Although our legislature has amended Arkansas Code Annotated section 9-13-101 to state that an award of joint custody is favored in Arkansas, joint custody is not mandatory. *Id*. The statutory preference for joint custody does not override the ultimate guiding principle that the best interest of the child is the polestar for a custody determination. *Id*.

Appellants offer no argument disputing the circuit court's findings that custody with Jesse is in EA's best interest. They also do not dispute the court's findings regarding Victoria's

immaturity, lack of steady employment, and drug abuse. Furthermore, Victoria had admittedly denied Jesse any contact with EA for several months in 2019. The court determined that Victoria should be awarded visitation but noted that she and Jesse did not live in close enough proximity for weekly overnight visitation. These factors demonstrate that an award of joint custody was not in EA's best interest. Appellants have failed to demonstrate reversible error.

Affirmed.

HARRISON, C.J., and VIRDEN, J., agree.

*Cullen & Co., PLLC*, by: *Tim Cullen*, for appellants.

*Owens, Mixon & Heller, P.A.*, by: *Haley Smith*, for appellee.