Cite as 2022 Ark. App. 221

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-21-603

| | |
|---|---|
| MIGUEL CAMPOS<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES; AND S.M. AND M.C.<br><br>APPELLEES | Opinion Delivered May 11, 2022<br><br>APPEAL FROM THE ST. FRANCIS COUNTY CIRCUIT COURT [NO. 62JV-20-27]<br><br>HONORABLE KATHIE HESS, JUDGE<br><br>REVERSED AND REMANDED |

**KENNETH S. HIXSON, Judge**

Appellant Miguel Campos appeals from an order terminating his parental rights to S.C. and M.C. On appeal, Campos argues that the statutory grounds for termination of his parental rights had not been met. Specifically, Campos contends that the only statutory grounds alleged by appellee Arkansas Department of Human Services (DHS) and found by the trial court pertained to a "parent" and that the trial court failed to find that he is a "parent" as that term is defined in the Juvenile Code. We agree with Campos's argument, and we reverse and remand.

I. *Facts and Procedural History*

On July 31, 2020, DHS filed a petition for emergency custody of S.C., who was then three years old, and M.C., a newborn baby. At the time of their removal, S.C. and M.C.

were in the legal custody of their mother, Kayla DeGunya.[1] At that time, DeGunya and Campos lived together with the children, but they were never married. In an attached affidavit, a DHS family service worker stated that Campos is the putative father of S.C. and M.C. and that Campos is listed as the father on S.C.'s birth certificate but not currently listed as the father on M.C.'s birth certificate. The affidavit stated that both children were taken into emergency DHS custody after DeGunya and M.C. tested positive for amphetamines at M.C.'s birth. The affidavit also stated that Campos had tested positive for amphetamines, methamphetamine, and THC.

On July 31, 2020, the trial court entered an ex parte order of emergency custody of both children. The emergency-custody order listed Campos as a putative parent of both children. The trial court found that removal of the children from the legal custody of their mother, DeGunya, was necessary to protect their health and safety because DeGunya and M.C. had tested positive for amphetamines at M.C.'s birth. On August 5, 2020, the trial court entered a probable-cause order listing Campos as a putative parent of the children.

An adjudication hearing was held on October 20, 2020, and an adjudication order was entered on May 18, 2021, listing Campos as a putative parent of the children. The trial court found that the children were dependent-neglected "based on drug abuse by the mother and putative father." The adjudication order further stated, "The Court finds there IS a non-custodial parent who is NOT a legal parent of the juveniles. Miguel Campos has

---

[1]DeGunya passed away from COVID complications during these dependency-neglect proceedings.

2

appeared and requested services." The trial court ordered "[t]he parents (mother and putative father)" to submit to random drug screens, complete a drug-and-alcohol assessment, complete parenting classes, and maintain stable housing. The trial court also found that the Office of Child Support Enforcement shall conduct DNA testing on Campos to determine if he is the biological father of the children.[2] The goal of the case was reunification.

The trial court entered four review orders between November 6, 2020, and July 13, 2021. In each of these review orders, Campos was listed as a putative parent, and the trial court found that the parents had somewhat complied with the case plan. In the July 13, 2021 review order, the trial court stated that Campos had requested the appointment of counsel.

A permanency-planning hearing was held on June 29, 2021, and a permanency-planning order was entered on October 1, 2021. The permanency-planning order listed Campos as a putative parent. In the permanency-planning order, the trial court noted, "A Default Judgment of paternity on Miguel Campos was admitted and entered into evidence." The trial court found that the parents had not complied with the case plan and changed the goal of the case to termination of parental rights and adoption. Noting that Campos had previously requested appointment of counsel, the trial court appointed Campos counsel. In the permanency-planning order, the trial court made no finding that Campos was the legal parent of the children.

---

[2]There is no evidence of a DNA test in the record.

3

On July 7, 2021, DHS filed a petition for termination of parental rights, seeking to terminate the parental rights of both DeGunya and Campos. DHS listed Campos as a putative parent in the style of the petition but referred to him as the father in the body of the petition and stated, "Miguel Campos had a default judgment of paternity entered against him for S.C. and M.C." DHS alleged that termination of parental rights was in the children's best interest and alleged the following two grounds with respect to both DeGunya and Campos. Pursuant to Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(a) (Supp. 2021), DHS alleged that the juveniles have been adjudicated by the court to be dependent-neglected and have continued to be out of the custody of the parent for twelve months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent. DHS also alleged, pursuant to subdivision (b)(3)(B)(vii)(a), that other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrated that placement of the juveniles in the custody of the parent is contrary to the juveniles' health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juveniles in the custody of the parent.

The termination hearing was scheduled for August 24, 2021. However, DeGunya passed away three days earlier on August 21, 2021. As a result of DeGunya's death and on Campos's motion, the trial court entered an order rescheduling the termination hearing for

4

September 21, 2021. The rescheduling order noted that DeGunya was deceased, and it listed Campos as a putative parent. The termination hearing was held on September 21, 2021.

Roshunda Brown, the DHS caseworker assigned to the case, testified at the termination hearing. Ms. Brown stated that during the case Campos failed to establish stable housing or proof of employment. Ms. Brown also stated that Campos failed to complete a drug-and-alcohol assessment and did not submit to drug screens. At the time of the termination hearing, Campos was in jail on numerous charges, including residential burglary, criminal mischief, possession of a controlled substance, and possession of drug paraphernalia. Prior to his incarceration, Campos's visitation with the children had been sporadic. Ms. Brown thought that the children would be in danger if placed in Campos's custody. Ms. Brown also stated that the children are adoptable and that their foster parent is willing to adopt them.

Campos also testified at the termination hearing. Campos stated that he is the father of S.C. and M.C. Campos stated that he had been employed during the dependency-neglect case. Campos acknowledged that he was incarcerated on felony charges and stated that his next criminal hearing was in a couple weeks. Campos stated that if he were granted probation, he would be able to get his old job back and that his employer would rent him a three-bedroom house that was suitable for the children. Campos asked for more time to complete the case plan and stated that given the opportunity he would do everything possible to get the children back.

5

During closing argument, counsel for DHS stated that "the Office of Child Support Enforcement declared [Campos] to be the legal father of the children by a paternity action." However, there was no documentation offered at the termination hearing to substantiate that claim.

On October 1, 2021, the trial court entered an order terminating Campos's parental rights to S.C. and M.C. The termination order listed Campos as a putative parent. In the termination order, the trial court found by clear and convincing evidence that termination of parental rights was in the children's best interest, and the trial court considered the likelihood that the children would be adopted as well as the potential harm of returning them to Campos's custody. The trial court also found clear and convincing evidence of one of the two statutory grounds alleged by DHS. Pursuant to Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*), the trial court found that the juveniles have been adjudicated by the court to be dependent-neglected and have continued to be out of the custody of the parent for twelve months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent. Although in body of the termination order Campos is referred to as the "father" in the trial court's specific findings regarding Campos's failure to comply with the case plan, the trial court did not find him to be a "parent" or make a finding as to Campos's legal status.

Campos now appeals from the termination order. Campos contends that because the trial court never found him to be a "parent" of the children, neither of the statutory

grounds pled against him or the single ground found by the trial court are legally applicable

to him because those grounds pertain only to parents.[3] He argues that because the "parent"

element of the statutory grounds was not met, the termination of his parental rights should

be reversed.[4] We agree.

## II. *Standard of Review*

Pursuant to Ark. Code Ann. § 9-27-341(b)(3)(B), an order terminating parental rights

shall be based on clear and convincing evidence of one or more statutory grounds. Proof of

only one statutory ground is sufficient to terminate parental rights. *Burks v. Ark. Dep't of

Hum. Servs.*, 2021 Ark. App. 309, 634 S.W.3d 527. To terminate parental rights, the trial

court must also find by clear and convincing evidence that termination is in the best interest

of the child, taking into consideration the likelihood that the child will be adopted if the

termination petition is granted and the potential harm, specifically addressing the effect on

the health and safety of the child, caused by returning the child to the custody of the parent.

Ark. Code Ann. § 9-27-341(b)(3)(A).

---

[3]Although the trial court found only one of the two statutory grounds pled by DHS, we have held that, on de novo review, we can affirm the trial court's termination decision on any ground that was alleged in the petition and proved. *See Fenstermacher v. Ark. Dep't of Hum. Servs.*, 2013 Ark. App. 88, 426 S.W.3d 483. However, as explained *infra*, neither of the statutory grounds pled by DHS can be sustained on appeal because both grounds include the requirement that Campos is a "parent," and the trial court never found Campos to be a "parent."

[4]Although Campos did not raise this argument below, it is preserved for appeal. This is because in a civil bench trial, a party who does not challenge the sufficiency of the evidence at trial does not waive the right to do so on appeal. *Earls v. Ark. Dep't of Hum. Servs.*, 2017 Ark. 171, 518 S.W.3d 81.

7

On appeal, termination-of-parental rights cases are reviewed de novo. *Wright v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 263, 576 S.W.3d 537. Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. *Id.* We will not reverse the trial court's ruling unless its findings are clearly erroneous. *Sharks v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 435, 502 S.W.3d 569. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Posey v. Ark. Dep't of Hum. Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). In determining whether a finding is clearly erroneous, we give due deference to the opportunity of the trial court to judge the credibility of witnesses. *Id.*

### III. *Discussion and Analysis*

Pursuant to Ark. Code Ann. § 9-27-303(48) (Supp. 2021), "putative father" means "any man not deemed or adjudicated under the laws of the United States to be the biological father of a juvenile who claims to be or is alleged to be the biological father of the juvenile." Pursuant to Ark. Code Ann. § 9-27-303(41), "parent" means:

(A)  A biological mother;

(B)  An adoptive parent; or

(C)  A man:

(i) To whom the biological mother was married at the time of conception or birth;

(ii)  Who has signed an acknowledgment of paternity pursuant to § 9-10-120;

8

(iii) Who has been found by a court of competent jurisdiction to be the biological father of the juvenile or to have otherwise established paternity; or

(iv) Who is listed as the parent on the birth certificate of the child[.]

Campos argues that because he was at all times identified as only a putative parent in the case and the trial court never found him to be a "parent," the termination order must be reversed. In support of this argument, Campos cites *Earls v. Arkansas Department of Human Services*, 2017 Ark. 171, 518 S.W.3d 81; *Northcross v. Arkansas Department of Human Services*, 2018 Ark. App. 320, 550 S.W.3d 919; and *Burks v. Arkansas Department of Human Services*, 2021 Ark. App. 309, 634, S.W2d 527.

In *Earls*, DNA testing in a dependency-neglect proceeding showed that Earls was the biological father of the children. Throughout the case, however, Earls was consistently recognized as the putative father, including in DHS's petition to terminate parental rights and the termination order itself. Although Earls's status as a parent was discussed at the termination hearing, no order was entered finding him to be a parent. The supreme court reversed the termination of Earls's parental rights, stating that "the record does not contain an order establishing Earls's legal status, and the termination order lists Earls as the putative father." *Earls*, 2022 Ark. App. 64, at 10, 639 S.W.3d at 87. The supreme court stated that, although Earls was appointed counsel for the termination hearing and was afforded rights as a parent, the record did not demonstrate that his legal status as the biological parent was established such to apply the statutory grounds found by the trial court. The supreme court in *Earls* concluded that Earls's rights had not attached to then be terminated.

9

In *Northcross*, the trial court ordered Northcross to submit to DNA testing and to establish paternity. In an amended termination petition, DHS asserted that DNA testing showed Norcross to be the biological father; he had been appointed counsel at the permanency-planning hearing; and he had significant contacts with the children for parental rights to attach. DHS asked for a specific finding whether parental rights had attached and, if so, requested that those rights be terminated. The termination order listed Northcross as the putative father in the style of the order, but in the order's opening paragraph it listed those present and included "Father, Fred Northcross." Northcross was also referred to as the father in the trial court's findings regarding both statutory grounds, i.e., "other factors" and "aggravated circumstances." However, despite the submission of a DNA test showing Northcross to be the biological father, the trial court never entered an order finding him to be the legal father. Relying on *Earls*, we reversed the termination order, holding that Northcross's rights could not be terminated without a finding establishing his status as a parent.

In *Burks*, we stated that the trial court made Burks's legal status an issue but failed to resolve the matter before terminating his parental rights. We noted that pursuant to the supreme court precedent in *Earls*, the trial court was required to make a specific finding that Burks is the parent before terminating his rights. Thus, in *Burks*, we reversed the termination.

In addition to the cases cited by Campos, this court also reversed a termination in *Terry v. Arkansas Department of Human Services*, 2019 Ark. App. 591, 591 S.W.3d 824. In

10

*Terry*, we stated that "a lay person's reference to himself as a father—or even a DNA test showing a 99% probability that the man is a biological father of a child—is insufficient to establish "parent" status for purpose of the termination process until and unless there is *an express finding by the circuit court* that the man is, in fact, a parent." *Terry*, 2019 Ark. App. 591, at 8, 591 S.W.3d at 829 (emphasis in original). In *Terry*, we reversed and remanded where DHS failed to establish Terry's parental status, and the trial court did not make an express finding that Terry was the juvenile's parent even when his parental status was never questioned throughout the case. In *Dreher v. Arkansas Department of Human Services*, 2022 Ark. App. 64, 639 S.W.3d 899, we relied on *Terry* and reversed a termination where there was no express finding by the trial court that Dreher was a parent. We wrote:

> At the May 20, 2021 termination hearing, the court asked if appellant wanted a DNA test, and his counsel stated that he admits that he is FD's father. However, at no point did the circuit court make a finding that appellant was a parent for purposes of the termination process.

*Dreher*, 2022 Ark. App. 64, at 10–11, 639 S.W.3d at 905.

In the present case, Campos was identified as a putative parent at the outset of the case, and he was thereafter consistently listed as a putative parent, including in DHS's termination petition and in the termination order itself. At no time was Campos listed as a parent. In an affidavit attached to DHS's petition for emergency custody, a family service worker stated that Campos was listed as the father on S.C.'s birth certificate. However, the birth certificate was not introduced into evidence, and the trial court clearly did not accept this statement in the affidavit because in the adjudication order, the trial court listed Campos

11

as the putative father and specifically found that he was "NOT a legal parent of the juveniles."

In the permanency-planning order, the trial court again listed Campos as the putative parent,

although noting in the order that, "A Default Judgment of Paternity on Miguel Campos was

admitted and entered into evidence." However, the trial court did not find Campos to be a

parent of the children in the permanency-planning order or in any other order. Campos's

legal status was not discussed at the termination hearing, and although Campos identified

himself as the father at the hearing, this was insufficient to establish his status as a "parent"

for termination purposes absent an express finding by the trial court that Campos was, in

fact, the parent. *See Terry*, *supra*. This case is similar to *Earls*, *supra*, in that while Campos

was appointed counsel at the termination hearing, no order was entered establishing his

status as a legal parent, and the termination order listed him as a putative parent. Because

none of the trial court's orders expressly found Campos to be a "parent," and, in fact, they

*all* uniformly referred to him as a putative parent, his status as a "parent" was not established

for purposes of the termination process.[5]

IV. *Conclusion*

Both statutory grounds alleged by DHS, and the single statutory ground found by the

trial court, required proof that Campos is a "parent" as a prerequisite to terminating his

parental rights. Because the trial court consistently referred to Campos as a putative parent

[5]DHS urges us to affirm Campos's status as a parent based on *Fowler v. State*, 2021 Ark. App. 159, and *Johnson v. State*, 2018 Ark. App. 221, 547 S.W.3d 489. However, these cases are distinguishable from the present case because, in both cases, the trial court found the appellant to be a "parent" in its orders.

12

and never entered an order expressly finding him to be a parent, Campos's rights had not attached to then be terminated. *See Earls, supra*. Therefore, we hold that the trial court erred in terminating Campos's parental rights. Accordingly, we reverse and remand for further proceedings.

Reversed and remanded.

GLADWIN and KLAPPENBACH, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.