Cite as 2023 Ark. App. 22

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-22-343

| | |
|---|---|
| DEVIN WAYNE CAMPBELL<br>APPELLANT | Opinion Delivered January 25, 2023 |
| V. | APPEAL FROM THE FAULKNER<br>COUNTY CIRCUIT COURT<br>[NO. 23JV-20-123] |
| ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES AND MINOR<br>CHILD | HONORABLE DAVID M. CLARK,<br>JUDGE |
| APPELLEES | AFFIRMED |

**WENDY SCHOLTENS WOOD, Judge**

The sole issue in this termination-of-parental-rights case concerns Devin Wayne Campbell's status as a parent. In an order entered on March 2, 2022, the Faulkner County Circuit Court terminated Campbell's parental rights to his minor child (MC), born on April 3, 2020, finding four grounds.[1] On appeal, Campbell argues that the Arkansas Department of Human Services (DHS) failed to present sufficient evidence to prove a required element of each of these statutory grounds—specifically, the element that he is a parent. We affirm.

Because Campbell's challenge is solely to his parental status and the circuit court's findings regarding that status, only a brief history of the case is necessary. DHS removed MC

---

[1]The circuit court also terminated the parental rights of MC's mother, Caitlin Rednour, but she is not a party to this appeal.

from her mother's custody on July 8, 2020, due to allegations of inadequate shelter and parental unfitness. Campbell was named as MC's putative father in DHS's initial petition for dependency-neglect and in the circuit court's ex parte order for emergency custody. On July 15, the circuit court held a probable-cause hearing, which Campbell attended. In a probable-cause order entered that same day, the court made the following relevant finding: "11. Additional findings and orders: Based upon the testimony, exhibits and agreement of the parties, the Court hereby adjudicates Devin Wayne Campbell to be the father of [MC]." Campbell was identified in all subsequent, relevant orders—and treated by the circuit court—as the "father" or the "legal father" of MC.[2]

The court entered an adjudication order on August 11 finding MC dependent-neglected and ordering Campbell to participate in counseling as recommended, refrain from the use of drugs and alcohol, submit to random drug screens, attend AA/NA meetings, obtain and maintain stable housing and employment, attend all medical appointments set up for MC when notified by DHS, and pay child support. The court continued to identify and treat Campbell as MC's legal father in all subsequent review orders.

In a review order entered on November 10, the circuit court found that Campbell had partially complied with the case plan and court orders, specifically noting he had failed to provide samples for drug testing, had tested positive for methamphetamine in samples he

[2]We note that while two motions and one order filed thereafter inadvertently retained the initial case caption and refer to Campbell as putative father, the adjudication order, all review orders, the permanency-planning order, and the order terminating Campbell's parental rights designate Campbell as MC's "father" or "legal father."

did provide, had admitted using THC, and had failed to complete a drug-and-alcohol assessment. In a review order entered on February 9, 2021, the court again found only partial compliance by Campbell, noting the same deficiencies. In a review order entered on April 22 and in a permanency-planning order entered on July 7, the court found that Campbell had failed to comply with the case plan and court orders, had made no progress towards alleviating or mitigating the causes of removal, had not had any meaningful contact with DHS, and had not visited with MC.

DHS filed a petition for termination of parental rights naming Campbell as the legal father, and the circuit court held a termination hearing on February 22, 2022. Both MC's mother and Campbell testified that Campbell is MC's father. The circuit court terminated Campbell's parental rights, finding the following grounds by clear and convincing evidence: (1) noncustodial parent's failure to remedy, Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*b*); (2) abandonment, § 9-27-341(b)(3)(B)(iv); (3) other factors, § 9-27-341(b)(3)(B)(vii)(*a*); and (4) aggravated circumstances, § 9-27-341(b)(3)(B)(ix)(*a)(3)* & *(5)* (Supp. 2021). The court also found by clear and convincing evidence that termination of Campbell's parental rights was in MC's best interest.

Campbell does not challenge the circuit court's best-interest findings, and his only challenge to the four grounds found by the court to support termination is that DHS failed

3

to prove that he is a parent.[3] He argues that he was identified in the initial order as the putative father and contends there is no testimony, order, or evidence in the record regarding his biological connection with MC. He recognizes that the probable-cause order adjudicated him as MC's "father," but he contends that this was not a finding regarding "biology" and thus was insufficient to "propel" him to the status of a parent. He argues the court's finding that he is a "father" is insufficient to make him a "parent" under the Juvenile Code. He also argues that, even were this a sufficient finding, the circuit court did not have authority to make such a finding in the probable-cause order. Citing Arkansas Code Annotated section 9-27-315(a), he claims that the probable-cause hearing is limited to the purpose of determining whether probable cause existed to protect the child and whether probable cause still exists, and he argues that all other issues must be reserved for the adjudication hearing.

Campbell's argument involves statutory interpretation. We review issues of statutory construction de novo, as it is for this court to decide what a statute means. *In re Adoption of Z.K.*, 2018 Ark. App. 533, at 4, 565 S.W.3d 524, 527. We are not bound by the circuit court's decision; however, in the absence of a showing that the circuit court erred, its interpretation will be accepted as correct on appeal. *Id.*, 565 S.W.3d at 527. The basic rule of statutory construction is to give effect to the intent of the legislature. *Ward v. Doss*, 361 Ark. 153, 158–59, 205 S.W.3d 767, 770 (2005). When the language of a statute is plain and

---

[3]Although there is a ground in the statute that applies to the termination of the rights of a putative father, Ark. Code Ann. § 9-27-341(b)(3)(B)(x), all the grounds the circuit court found in this case apply to parents.

unambiguous, we determine legislative intent from the ordinary meaning of the language used. In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Tovias v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 228, at 5, 575 S.W.3d 621, 624. We construe the statute so that no word is left void, superfluous, or insignificant, and we give meaning and effect to every word in the statute, if possible. *Id.* at 5–6, 575 S.W.3d at 624. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction. *Stephens v. Ark. Sch. for the Blind*, 341 Ark. 939, 945, 20 S.W.3d 397, 401 (2000).

With these standards in mind, we turn to the Juvenile Code's definition of "parent":

(A) A biological mother;

(B) An adoptive parent; or

(C) A man:

(i) To whom the biological mother was married at the time of conception or birth;

(ii) Who has signed an acknowledgment of paternity pursuant to § 9-10-120;

(iii) *Who has been found by a court of competent jurisdiction* to be the biological father of the juvenile or *to have otherwise established paternity*; or

(iv) Who is listed as the parent on the birth certificate of the child[.]

Ark. Code Ann. § 9-27-303(41) (Supp. 2021) (emphasis added).

Here, the circuit court, indisputably a court of competent jurisdiction in dependency-neglect cases, specifically found Campbell to be MC's father in its probable-cause order.

5

Pursuant to subdivision (C)(iii) of the above-quoted statute, that makes Campbell a parent. He was thereafter referred to as MC's father and treated by the court and the parties as MC's father. The statute itself contradicts Campbell's argument that the court's finding was not "sufficient" to make him a parent because it did not state that he is the biological father, providing that a parent is a man who "has been found by a court of competent jurisdiction to be the biological father of the juvenile *or* to have otherwise established paternity." *Id.* (emphasis added.) Moreover, the Juvenile Code specifically provides that a court may establish paternity without a DNA test being performed. *See* Ark. Code Ann. § 9-27-325(n)(2)(C) (Supp. 2021).

Campbell cites *Tovias*, 2019 Ark. App. 228, 575 S.W.3d 621, in support of his argument that the circuit court must find that a man is the "biological" father of a child to be a parent. We disagree that *Tovias* stands for such a proposition. In *Tovias*, the circuit court's findings on paternity were "murky at best." *Tovias*, 2019 Ark. App. 228, at 10, 575 S.W.3d at 626.

We noted Tovias was referred to in the permanency-planning order in the same sentence as both the "legal father" and the "putative father." *Id.* at 3–4, 575 S.W.3d at 623. This court further noted in *Tovias* that there was "absolutely no basis in the record" to support the finding of legal status. *Id.* at 9, 575 S.W.3d at 626.

In contrast, the circuit court in this case specifically found Campbell to be the father in its probable-cause order and treated him as such throughout the remainder of the case. Also, there is evidence in this record to support the court's finding in the probable-cause

order because the court expressed that it was based on "the testimony, exhibits and agreement of the parties." Further, Campbell proceeded throughout the case as MC's father and testified at the termination hearing that he is.[4] An appellant may not complain of an action of the circuit court that he induced, consented to, or acquiesced in. *Ponder v. Ark. Dep't of Hum. Servs.*, 2016 Ark. 261, at 5, 494 S.W.3d 426, 429.

Campbell also cites the supreme court's decision in *Earls v. Arkansas Department of Human Services*, 2017 Ark. 171, at 9–10, 518 S.W.3d 81, 87, and our cases following *Earls* in support of his position. Those cases are inapposite, as they turn on the lack of a circuit court order making a specific finding of paternity. In *Earls*, although there was a discussion regarding Earls's status, no order was entered finding him to be the parent, and he was actually listed as the putative father in the order terminating his parental rights. *Id.*, 518 S.W.3d at 87. In *Burks v. Arkansas Department of Human Services*, 2021 Ark. App. 309, at 11, 634 S.W.3d 527, 533, we reversed and remanded a termination order, stating that the circuit court made Burks's legal status an issue but failed to resolve the matter before terminating his parental rights. We held that the circuit court was required to make a specific finding that Burks was the parent before terminating his rights. *Id.*, 634 S.W.3d at 533. We did the same in *Campos v. Arkansas Department of Human Services*, holding that without a finding that Campos was a parent, the grounds applying to parents could not be applied to him. 2022 Ark. App. 221, at 12–13, 644 S.W.3d at 472; *see also Kugler v. Ark. Dep't of Hum. Servs.*, 2022

---

[4]MC's mother also testified at the termination hearing that Campbell is MC's father.

Ark. App. 485, at 11, ___ S.W.3d ___, ___ (noting that the order terminating parental rights referred to Kugler as the putative parent and made no finding that he was a parent). Contrary to the facts in these cases, here the circuit court specifically found Campbell to be MC's father.

Campbell also contends that the record contains no evidence that he and MC's mother were ever married; that a biological connection with MC had been proved; or that a birth certificate or an acknowledgement of paternity naming him the legal father existed or was presented at the termination hearing. This argument ignores the critical fact that his paternity was established before the termination hearing. The circuit court adjudicated him the father at the probable-cause hearing on the basis of "the testimony, exhibits and agreement of the parties," and this order was entered into evidence at the termination hearing. The record on appeal does not contain the transcript from the probable-cause hearing, and it is Campbell's burden to bring up a record sufficient to demonstrate that the circuit court was in error. *Ponder*, 2016 Ark. 261, at 4, 494 S.W.3d at 428. He has not.

Finally, we reject Campbell's argument that the court had no authority to make a parental-status finding at the probable-cause hearing. The proceedings and orders pertaining to the termination of parental rights "build on one another," and the findings of previous hearings are often elements of subsequent hearings. *Potterton v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 454, at 3, 527 S.W.3d 769, 771. A determination of paternity is precisely the type of finding that a court should make early in the process.

For the foregoing reasons, we affirm the circuit court's termination order.

Affirmed.

GRUBER and HIXSON, JJ., agree.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for appellant.

*Demarcus D. Tave*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.